**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

---

SEBASTIAN CORREA MORALES,
Petitioner-Appellee,
– against –
JULIANA ESCOBAR RESTREPO,
Respondent-Appellant.

---

**Appeal No. 26-1012**
Related Second Circuit Appeal No. 25-806
Related District Court Case No. 25-cv-06998 (NCM) (TAM)
Related District Court Case No. 24-cv-07951 (NCM) (TAM)
United States District Court, Eastern District of New York

---

**RESPONDENT-APPELLANT'S SUPPLEMENTAL SUBMISSION IN
SUPPORT OF EMERGENCY MOTION FOR STAY PENDING APPEAL
WITH NOTICE OF NEWLY SUBMITTED EVIDENCE**

## I. INTRODUCTION

Respondent-Appellant Juliana Escobar Restrepo respectfully submits this supplemental letter to bring to the Court's attention two categories of material evidence that were either unavailable at the time of the original Emergency Motion for Stay (filed April 22, 2026) or that require further explanation in light of the urgency of these proceedings: (1) the *Final Custody Order* issued on November 28, 2025 by the Family Affairs Office of the Municipality of Itagüí, Colombia (the "Commissioner's Order"), attached hereto as **Exhibit A**; and (2) Respondent-Appellant's proof of request to Colombian immigration authorities for certified records of the migratory movements of Petitioner-Appellee Sebastian Correa Morales, **Exhibit B,** to show he no longer domiciles in

Colombia, which records are confidential under Colombian law and are only obtainable through a judicial order.

Both categories of evidence are directly responsive to the core factual and legal disputes in this appeal, and specifically to the question of whether Colombia is properly the *habitual residence* of the minor child L.C. under the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention") and *Monasky v. Taglieri*, 589 U.S. 68 (2020). Respondent-Appellant respectfully requests that this Court consider this supplemental submission in connection with the pending Emergency Motion for Stay. Additionally is attached ordered of return from Honorable Natasha C. Merle ordered April 23, 2026, **Exhibit C**.

## II. THE FINAL CUSTODY ORDER CONFIRMS RESPONDENT-APPELLANT'S LEGAL AUTHORITY UNDER COLOMBIAN LAW AND DIRECTLY UNDERMINES THE DISTRICT COURT'S FINDINGS

**A. The Commissioner's Order Is a Final Administrative Custody Determination.**

Attached hereto as **Exhibit A** is a true copy of the Final Custody Order entered on November 28, 2025 with certified translation, by the Family Affairs Office of the Municipality of Itagüí, Antioquia, Colombia ("Commissioner's Office"), a competent administrative authority under Colombian Law 1098 of 2006 (Código de la Infancia y la Adolescencia), as modified by Law 1878 of 2018. This Order is a final administrative determination—not a provisional measure—granting full physical custody of L.C. to Respondent-Appellant as a protective measure for the minor child.

This Order was issued *after* L.C.'s return to Colombia pursuant to the first Hague proceeding (Restrepo I), following contested custody proceedings in which both parties participated.

Petitioner-Appellee was a party to those Colombian proceedings and had full opportunity to be heard. The Commissioner's Office determined, as a final matter, that sole custody was warranted as a protective measure—a finding consistent with Respondent-Appellant's evidence of domestic abuse, financial abuse, psychological abuse, and vicarious violence perpetrated by Petitioner-Appellee.

**B. The Commissioner's Order Was Omitted from the District Court's Findings of Fact.**

As noted in Respondent-Appellant's Emergency Motion, the District Court's April 9, 2026 Order of Return failed to address the Commissioner's Order in its findings of fact, despite its direct relevance to: (a) whether Petitioner-Appellee held any *ne exeat* rights that could have been "breached" under Article 3 of the Hague Convention; (b) whether Colombian custody law granted Petitioner-Appellee any authority to restrict L.C.'s movement; and (c) whether Respondent-Appellant's relocation to New York on December 3, 2025, pursuant to Article 110 of Law 1098 of 2006, constituted wrongful removal under the Convention.

The omission of a final, operative Colombian custody order from the District Court's factual analysis is legal error of the first order. A court adjudicating Hague Convention rights and obligations is required to consider applicable foreign law custody determinations. The failure to do so warrants reversal and independently supports a stay pending appeal.

**C. The Commissioner's Order Confirms L.C.'s Lawful Presence in New York.**

Under Article 110 of Colombian Law 1098 of 2006 (as modified by Law 1878 of 2018), the parent holding custody may change the child's place of residence without the other parent's consent, provided notification requirements are met. Because the Commissioner's Order vested custody in

Respondent-Appellant, her relocation of L.C. to New York on December 3, 2025, was expressly authorized by Colombian law. The District Court's conclusion that this relocation was "wrongful" within the meaning of Article 3 of the Hague Convention does not adequately account for this legal framework, and this question is squarely before this Court on appeal.

## III. RESPONDENT-APPELLANT HAS INITIATED FORMAL PROCEEDINGS TO OBTAIN PETITIONER-APPELLEE'S COLOMBIAN IMMIGRATION RECORDS, AND REQUESTS THAT THIS COURT TAKE NOTICE OR ISSUE APPROPRIATE JUDICIAL ASSISTANCE

**A. The Migratory Records Are Directly Relevant to Petitioner-Appellee's Habitual Residence.**

A central factual premise underlying both the Restrepo I and the instant Order of Return is that Petitioner-Appellee Sebastian Correa Morales is habitually resident in Colombia and capable of exercising parental rights there. Respondent-Appellant has reason to believe—based on direct communications and other information available to her—that Petitioner-Appellee has not been domiciled or habitually resident in Colombia since at least February 2026, and has relocated to Brazil, where he has no cognizable parental rights under Colombian law and no legal authority to exercise *patria potestad* over L.C.

Under *Monasky v. Taglieri*, 589 U.S. 68, 78 (2020), habitual residence is a fact-sensitive inquiry into where the child has a "settled routine" and parental intentions. It is equally relevant to this inquiry whether the purportedly "left-behind" parent himself maintained continuous, settled

residence in the country of alleged habitual residence. If Petitioner-Appellee has abandoned his Colombian domicile, the entire factual predicate of both Hague petitions is undermined.

**B. Colombian Law Restricts Access to Immigration Records; A Judicial Order Is Required.**

Under Colombian law—specifically, the regime administered by *Migración Colombia* pursuant to Decree 1067 of 2015 and Resolution 3167 of 2019—records of an individual's migratory movements (entries, exits, and travel history) are classified as confidential personal data and are not publicly accessible. They may be released only upon: (i) request by the individual themselves; (ii) a competent Colombian judicial or administrative order; or (iii) a formal international judicial assistance request.

Respondent-Appellant has *formally requested* the migratory movement records of Petitioner-Appellee Sebastian Correa Morales from *Migración Colombia*. That request was denied because Respondent-Appellant is not the subject of those records, release requires a judicial order. Those records are therefore not yet available for submission to this Court as an exhibit, given the imminent and urgent situation the court may request this.

**C. Respondent-Appellant Respectfully Requests That This Court Take One of the Following Steps Regarding the Immigration Records.**

In light of the above, Respondent-Appellant respectfully requests that this Court:

1. Take judicial notice of the fact that Respondent-Appellant has initiated a formal request for Petitioner-Appellee's migratory records from Migración Colombia, and that such records are confidential under Colombian law and cannot be disclosed without a judicial order;

2. Issue a letter rogatory or judicial assistance request directed to the competent Colombian judicial authority (Migracion Colombia or equivalent), requesting production of the complete migratory movement records of Sebastian Correa Morales, Colombian and U.S. citizen, for the period January 2025 through the present; or, in the alternative,

3. Order Petitioner-Appellee to produce records reflecting his travel history, entries into and exits from Colombia, and current domicile for the period of January 2025 through the present, within such time as the Court deems appropriate, and to stay enforcement of the return order pending receipt and review of such records.

Petitioner-Appellee, as the subject of his own immigration records, has the right to request and obtain those records from *Migración Colombia* directly, without a judicial order. The Court may therefore direct Petitioner-Appellee to produce them as part of any supplemental briefing or record. His refusal or failure to do so should be treated as an adverse inference that the records would not support his claimed domicile in Colombia.

## IV. THE NEW EVIDENCE FURTHER SUPPORTS THE STAY FACTORS

Taken together, the Commissioner's Order (Exhibit A) and the pending immigration records request reinforce each of the four stay factors:

**Likelihood of Success on the Merits.** The Commissioner's final custody order—which the District Court failed to address—constitutes powerful evidence that Respondent-Appellant held the legal authority under Colombian law to relocate L.C. without Petitioner-Appellee's consent. Combined with the unresolved legal questions in Restrepo I (No. 25-806), there is a substantial likelihood that this Court will find reversible error in the District Court's return order.

**Irreparable Harm.** If the migratory records, once obtained, confirm that Petitioner-Appellee has abandoned his Colombian domicile and relocated abroad, then forcing L.C.'s return to Colombia under the current Order would deliver the child to a country where the purported parent with legal rights under Colombian law does not even reside and cannot exercise them—causing irreversible disruption to L.C.'s settled life in New York and further exposing Respondent-Appellant and L.C. to harm.

**Harm to Petitioner-Appellee.** As noted in the original motion, Petitioner-Appellee has maintained contact with L.C. remotely. If he has indeed relocated to Brazil, a brief stay of the return order causes him no incremental harm.

**Public Interest.** The public interest strongly disfavors enforcement of a Hague return order premised on a factual record that may be materially incomplete—particularly where a final Colombian custody order was omitted from the District Court's analysis, and where the left-behind parent's own continuous residence in the country of alleged habitual residence is in genuine dispute.

## V. CONCLUSION AND SUPPLEMENTAL RELIEF REQUESTED

For the foregoing reasons, Respondent-Appellant respectfully requests that this Court:

1. Consider the attached Final Custody Order of November 28, 2025 (Exhibit A) as part of the supplemental record in support of the pending Emergency Motion for Stay;

2. Take judicial notice that Respondent-Appellant has formally requested Petitioner-Appellee's migratory movement records from Migración Colombia, that such records were denied, and that their release requires a judicial order under Colombian law;

3. Order Petitioner-Appellee to produce records of his current domicile and migratory movements for the period January 2025 through the present, or issue such judicial assistance as is necessary to obtain those records from Colombian authorities;

4. Grant the Emergency Stay previously requested in light of a return order being in placed for May 1, 2026, or at minimum issue a temporary administrative stay pending the Court's review of this supplemental submission and the migratory records to be obtained; and

5. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

**Juliana Escobar Restrepo**
Pro Se Respondent-Appellant
1207 154th Street, Whitestone, NY 11357
(718) 219-3356
escobar.juliana@live.com
Dated: April 28, 2026

**CERTIFICATE OF SERVICE**

I, Juliana Escobar Restrepo, hereby certify that on April 28, 2026, I served a true and correct copy

of this Supplemental Submission, together with Exhibits, upon counsel for Petitioner-Appellee by

mail to:

Richard Min
Michael Banuchis
Camilla Redmond Costa
Green Kaminer Min & Rockmore LLP
420 Lexington Ave. Ste. 2821, New York, NY 10170
Tel: 212.681.6400 | Fax: 212.681.6999

Juliana Escobar Restrepo
Pro Se Respondent-Appellant

# Exhibit A

Case: 26-1012, 04/28/2026, DktEntry: 17.1, Page 10 of 50

| | *Resolución 511508 del 1 de diciembre del 2025* | |
|---|---|---|
| | **RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS** | Co~~ ~~ ~~ ~~90 VGaReso-511506-2025 **Fecha de Actualización: 12/11/2019** |

## COMISARÍA DE FAMILIA N°3
## SECRETARIA DE GOBIERNO
## MUNICIPIO DE ITAGÜÍ

**DEPENDENCIA:** COMISARIA DE FAMILIA N° 3
**ASUNTO:** AUDIENCIA DE PRÁCTICA DE PRUEBAS Y FALLO
**DENUNCIANTE:** SEBASTIAN CORREA MORALES
**DENUNCIADA:** JULIANA ESCOBAR RESTREPO
**NIÑO:** LIAM SEBASTIAN CORREA ESCOBAR
**RADICADO:** 022-2025

Itagüí, siendo las 2:00pm del día 28 de noviembre de 2025, la Comisaría de Familia N°3 del municipio de Itagüí, declara abierta la diligencia, de conformidad a lo reglado en el Art. 100 y 101 de la Ley 1098 de 2006, modificado por el Art. 4 de la Ley 1878 de 2018. En la presente diligencia fueron citados los señores SEBASTIAN CORREA MORALES y JULIANA ESCOBAR RESTREPO, quienes tienen la calidad de progenitores del niño LIAM SEBASTIAN CORREA ESCOBAR, y comparecen de manera virtual en compañía de sus apoderados judiciales, las Dras. VIVIANA ARANGO y SANDRA ALZATE respectivamente; así mismo, se pone en conocimiento la presencia de la Dra. LISS MAYIBERTH DUARTE VASQUEZ, en calidad de ministerio público del municipio de Itagüí, de la profesional LUISA RENDON, Gestora de Caso de la Fundacion Sanar; y de igual manera, se cuenta con la presencia de las profesionales MANUELA MUÑOZ y VALENTINA MACIAS, quienes fungen como equipo psicosocial de la Comisaria de Familia N°3 del municipio de Itagüí y emitieron el informe sustento de la decisión a tomar, en este estado de la diligencia, en consecuencia, se procede a incorporar, dar lectura y traslado de las demás pruebas y diligencias obrantes en el proceso, con el fin de que las partes puedan ejercer su derecho de contradicción:

- Informe psicosocial de seguimiento dentro del proceso administrativo de derechos del niño LIAM SEBASTIAN CORREA ESCOBAR.
- Diligencia de declaración de los señores SEBASTIAN CORREA MORALES y JULIANA ESCOBAR RESTREPO.
- Auto Interlocutorio del 12 de noviembre de 2025, por medio de la cual, se admitió la Acción de Tutela en contra de la Comisaria de Familia N° 3, por parte del Juzgado Segundo Civil Municipal de Oralidad de Itagüí, bajo el Rad. 01227-2025.
- Respuesta de la acción constitucional emitida por parte del Despacho de la Comisaria de Familia.
- Auto Interlocutorio del 13 de noviembre de 2025, emitido por parte del Juzgado Segundo Civil Municipal de Oralidad de Itagüí; por medio de la cual, se negó las medidas provisionales peticionadas dentro de la Acción de Tutela, bajo el Rad. 01227-2025.
- Sentencia N° 647 del 25 de noviembre de 2025, proferida por parte del Juzgado Segundo Civil Municipal de Oralidad de Itagüí, bajo el Rad. 01227-2025.
- Informe de reporte de novedad por parte de la Fundacion Sanar.



| | RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS |  Có... ...80 Ve...Reso-511508-2025 Fecha de Actualización: 12/11/2019 |
|---|---|---|

- Memorial presentando por parte de la Dra. SANDRA ALZATE, fechado el 24 de noviembre de 2025, -pronunciamiento frente a pruebas aportadas por el denunciante y frente al informe de la Fundacion Sanar.
- Memorial presentando por parte de la Dra. SANDRA ALZATE, -perdida de competencia.
- Documentos presentados por los señores SEBASTIAN CORREA MORALES y JULIANA ESCOBAR RESTREPO.

Previo a continuar con el desarrollo de la diligencia, se hace necesario en una primera instancia resolver la solicitud de perdida de competencia presentada por parte de la apoderada judicial SANDRA ALZATE, vía correo electrónico el pasado 26 de noviembre del año en curso; para lo cual, este fallador administrativo tiene para decir que, en una primera instancia el Despacho, mediante Auto N° 471 del 29 de octubre de 2025, fijó fecha para la audiencia de práctica de pruebas y fallo del presente proceso, para el día 14 de noviembre de 2025, a las 11:00am, la misma que fue notificada a los representantes legales del menor, el día 30 de octubre de 2025; en cuanto a la comunicación al ministerio público se efectuó en la misma fecha; posteriormente, y por medio de memorial radicado por la reseñada profesional, ésta, presento vía correo electrónico el día 13 de noviembre del presente año, un memorial solicitando al Despacho un aplazamiento de la diligencia; toda vez que, presentaba un diagnóstico de A09X-Diarrea y gastroenteritis de presunto origen infeccioso, aportando prueba sumaria de ello, es decir, la incapacidad medica la misma que iniciaba el 13 de noviembre y finalizaba el 14 de noviembre del 2025, la cual fue expedida por la IPS Coomeva, tal como obra en el plenario; así las cosas, este Despacho Comisarial por medio de Auto N° 492 del 13 de noviembre de 2025, dispuso suspender la diligencia anteriormente descrita, con el propósito de garantizar el derecho de postulación y defensa técnica, de conformidad con lo reglado en el Art. 73 del C.G. P de la señora JULIANA ESCOBAR RESTREPO, y determino que posteriormente seria reprogramada, tal como fue materializado por medio de Auto N° 503 del 24 de noviembre de 2025.

En este contexto, la solicitud de aplazamiento se fundamentó en una incapacidad médica acreditada por parte de la apoderada, lo que constituye una causa justificada para suspender la audiencia, en aplicación analógica del régimen de interrupción y suspensión previsto en el C.G.P para garantizar el derecho de defensa tipificados en los Arts. 5 y 73 C.G.P; ya que negar el aplazamiento habría implicado vulnerar el derecho fundamental de defensa técnica de la progenitora, afectando la validez del proceso y exponiéndolo a nulidades, conforme a lo deprecado en el Art. 14 C.G.P, en armonía con el Art 29 de la Carta Política, el mismo que hace referencia al debido proceso. Si bien es cierto, el término de seis meses es improrrogable, tal como lo reseña el Art. 100 de la Ley 1098 de 2006, modificado por el Art. 4 de la Ley 1878 de 2018; la jurisprudencia y doctrina administrativa reconocen que la finalidad de la norma es evitar dilaciones injustificadas, no sancionar situaciones de fuerza mayor que impidan la realización de la audiencia por causas ajenas a la autoridad; En este caso, la autoridad actuó con diligencia; toda vez que, la audiencia estaba programada dentro del término legal y la suspensión obedeció a una circunstancia extraordinaria y acreditada, y no a una negligencia administrativa.



| | RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS | Código: [QR] VaReso-S11508-2025 |
|---|---|---|
| | | Fecha de Actualización: 12/11/2019 |

También hay que tener en cuenta que, el interés superior exige adoptar decisiones responsables, serias, probatorias y garantistas, no apresuradas para cumplir un término y la definición de la situación jurídica debe ser oportuna, pero también legal, justa y respetuosa de las garantías de todas las partes, lo cual es condición para que la medida de protección sea válida, así las medidas de protección adoptadas en el presente proceso.

Corolario a lo antes expuesto, considera el suscrito que no es procedente la solicitud de perdida de competencia, en tanto que, la misma obedeció a una situación ajena al Despacho y no a una real negligencia o desidia por parte de la autoridad administrativa, tal como se acredita en el cuaderno procesal.

Continuando con el trámite de la audiencia, se procederá a entregarles una copia a cada uno de los progenitores del informe técnico psicosocial adelantado en el proceso, el cual se califica como idóneo, conducente y pertinente, pues fue realizado por profesionales con pleno conocimiento de su saber y del caso en concreto; por ello, se le da el carácter de pericial como prueba dentro del presente proceso; garantizándose así, el debido proceso tipificado en el Art. 29 de la Constitución Política.

Quedando cerrada la etapa probatoria, sin observar vicios en el procedimiento, los respectivos informes, quedan en firme, no requiriéndose ampliación de ellos; de conformidad a lo descrito en líneas anteriores y no existiendo necesidad de acudir a otras pruebas, por ser suficiente las agotadas en este proceso, el Despacho se constituye en audiencia y pasa a proferir el correspondiente fallo.

RESOLUCIÓN N° 511508 DEL 28 DE NOVIEMBRE DE 2025

PARD N° 022-2025

*"Por medio de la cual se declara en situación de vulneración de los derechos al menor LIAM SEBASTIAN CORREA ESCOBAR y se ordenan las siguientes medidas para su restablecimiento de derechos consagradas en el Art. 53 del Código de la Infancia y la Adolescencia."*

CONSIDERANDO

El pasado mes de mayo del presente año, el Despacho de la Comisaria de Familia, avocó conocimiento de una solicitud de verificación de derechos peticionada por parte del señor SEBASTIAN CORREA MORALES, quien tiene la calidad de progenitor del niño LIAM SEBASTIAN CORREA ESCOBAR; y quien reportó que, la progenitora de su descendiente, la señora JULIANA ESCOBAR RESTREPO, presuntamente vulneraba los derechos de su prohijado, informando que ésta, llevo a su hijo a Estados Unidos con un permiso temporal, pero que la progenitora incumplió el retorno y una Jueza Federal ordenó el regreso a Colombia; adicional a ello, indicó el citado CORREA MORALES, que durante la estancia del menor en dicho país, la estabilidad de éste fue afectada por múltiples cambios de domicilio y se restringió severamente el contacto físico con la familia paterna, negando video llamadas y su ubicación; sumado a lo anterior, también se expuso que desde que, el menor regreso a Colombia, éste, se encontraba



| | |  |
|---|---|---|
| | **RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS** | Código S-11508-2025 |
| | | Fecha de Actualización: 12/11/2019 |

desescolarizado y que la progenitora le negaba el contacto físico, solo permitiendo video llamadas; y por último, se indicó por parte del progenitor del aludido infante que constantemente veía triste a su hijo. Así las cosas, se solicitó intervención del Despacho.

A lo antes expuesto, el día 14 de mayo del hogaño, la presente autoridad administrativa avocó conocimiento de la solicitud de verificación de derechos y ordenó realizar al equipo psicosocial las valoraciones iniciales, tales como:(acta de verificación de derechos, declaraciones, entrevista e informes de valoración psicológica y visitas domiciliarias); dichos informes determinaron que se hacía necesario iniciar un PARD a favor del niño LIAM SEBASTIAN CORREA ESCOBAR, es así, que el Despacho de la Comisaria de Familia el pasado 4 de julio de 2025, aperturó proceso administrativo de restablecimiento de derechos a favor del mencionado menor; debido a que, se identificó un relacionamiento altamente hostil entre los progenitores del menor, extendiéndose este ambiente tenso al referido infante, lo cual, pudiera interferir en el sano desarrollo emocional del niño, lo anterior, debido a los múltiples conflictos que se han presentado entre los progenitores y que configuran un continuo ciclo de violencia, en especial violencia psicológica, que afectan de manera indirecta el desarrollo integral del niño y específicamente su desarrollo psicológico y emocional; ya que, el niño se ha convertido el objeto de poder y disputa entre ambos padres.

Como consecuencia a lo antes expuesto, se tomaron varias medidas de protección, tales como: Inicialmente se adoptó como medida de protección, la ubicación del menor LIAM SEBASTIAN, en medio familiar asignando los cuidados personales del citado menor a su progenitora la señora JULIANA ESCOBAR RESTREPO, se amonestó a los progenitores, se solicitó ante el ICBF un cupo de atención de intervención de apoyo psicosocial, con el objetivo que dicho grupo familiar fuera intervenido con la finalidad de restablecer los derechos fundamentales del menor, se fijó de manera provisional una cuota de alimentos y régimen de visitas, se dispuso realizar una audiencia de conciliación con el objetivo de regular derechos y obligaciones a favor del NNA, se exhorto a los representantes legales del menor objeto de quien se litiga, para que éstos, no vuelvan a involucrar a su prohijado en sus diferencias y no ejerzan algún tipo de influencia, se instó a los progenitores, para que éstos, vinculen a su descendiente al sistema educativo colombiano, se ordenó dejar sin efectos el Acta de Conciliación N° 00207 del 7 de mayo de 2025, realizada ante el Centro de Conciliación "Avancemos" y se decretaron pruebas a favor de ambos progenitores.

El presente proceso administrativo fue notificado por aviso a los señores SEBASTIAN CORREA MORALES, y JULIANA ESCOBAR RESTREPO, el día 9 de julio de 2025. Y en lo que respecta a la comunicación a ministerio público, ésta se materializó el 8 de julio de 2025.

Posteriormente, el día 8 de julio de 2025, se solicitó cupo ante el ICBF, para realizar intervención de apoyo psicosocial vulneración a favor del niño LIAM SEBASTIAN CORREA ESCOBAR y acto seguido el día 25 de septiembre de 2025, se emitió boleta de ingreso para la Fundacion Sanar, iniciara a favor de éste, un proceso de atención psicosocial, a fin de restablecer de esta manera los derechos amenazados y/o vulnerados identificados en el menor LIAM SEBASTIAN.

De igual manera, el día 9 de julio de 2025, se realizó diligencia de amonestación a los representantes legales, los mismos que fueron notificados y consistió en la realización de un



| | RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS | C... Ve...Resc-511508-2025 Fecha de Actualización: 12/11/2019 |
|---|---|---|

curso pedagógico de derechos a la niñez y adolescencia ante la defensoría del pueblo. Es relevante indicar que, previa a una solicitud de la apoderada judicial de la señora JULIANA ESCOBAR, esta agencia de familia, nuevamente notificó a los representantes legales, debido a un error involuntario en el escaneo del auto de apertura, tal como se acredita en el expediente.

Consecutivamente, los señores JULIANA ESCOBAR y SEBASTIAN CORREA, fueron citados vía correo electrónico, con el objetivo de realizar una audiencia de conciliación para el día 22 de julio de 2025, a las 9:00am, en aras a determinar derechos y obligaciones a favor de su descendiente.

Subsiguientemente, la Dra. SANDRA ALZATE, allegó vía correo electrónico el pasado 9 de julio del año en curso, una petición respecto a la entrega de pasaportes del menor LIAM, que estaban bajo la custodia del progenitor de éste; es así como, este Despacho Comisarial por medio de Auto N° 291 del 15 de julio de 2025, dio respuesta a lo peticionado, el mismo que fue notificado a los extremos procesales vía correo electrónico.

Posteriormente, el señor SEBASTIAN CORREA, arrimo un memorial el 16 de julio de 2025, en el cual indicó al Despacho que le confirió poder a la Dra. VIVIANA ARANGO, para que represente sus intereses en el proceso de la referencia; es por ello por lo que, la presente autoridad administrativa, a través de Auto N° 296 del 16 de julio de 2025, hizo un pronunciamiento reconociéndole personería jurídica para actuar a la referida togada, el mismo que fue notificado por Estados.

Adicional a lo antes expuesto, es relevante señalar que, y como es de conocimiento por parte del Despacho y de los extremos procesales, de manera simultánea esta agencia de familia se encuentra adelantando un proceso administrativo de violencia en el contexto familiar, el mismo que fue incoado por parte de la señora JULIANA ESCOBAR y en contra del señor SEBASTIAN CORREA, y en aras a que la referida ESCOBAR RESTREPO, no sea revictimizada, una vez se aperturó el presente proceso, la Comisaria de Familia, optó por designar una tercera persona que sirviese de intermediario entre ambos padres, designando para tal asunto, a la señora YANER MORALES, quien tiene la calidad de abuela paterna del citador menor.

En ese orden de ideas, la profesional en derecho SANDRA ALZATE radico vía correo electrónico a este Despacho el pasado 16 de julio de 2025, un memorial titulado "pronunciamiento frente a historia de atención." Acto seguido, la referida vocera judicial nuevamente arrimo vía correo electrónico el día 17 de julio de 2025, un memorial denominado "pronunciamiento frente al proceso PARD"; de igual manera, en dicho memorial se relacionó una solicitud para que se decretaran pruebas documentales a favor de la señora JULIANA ESCOBAR, así como, pruebas testimoniales, relativas a las declaraciones de los señores ANA ESCOBAR, JAFET DOMINGUEZ, MARIA OCAMPO, JUAN OCAMPO. De igual manera, la Dra. SANDRA ALZATE, reitero una nueva solicitud, consistente en una prueba trasladada del proceso VIF 028-25 y radico nuevamente un memorial denominado oposición al desarrollo del régimen de visitas decretado en el Auto N° 277 del 4 de julio de 2025.

En ese sentido, la apoderada del señor SEBASTIAN CORREA, arrimo un memorial vía correo electrónico referenciado como solicitud de decreto de practica de pruebas y pronunciamiento





| | RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS | Código: Versión-511508-2025 Fecha de Actualización: 12/11/2019 |
|---|---|---|

sobre solicitud de protección, relacionando una serie de pruebas documentales y testimoniales, relativas en la recepción de la declaración de los señores BIBIANA MORALES y NICOLAS CORREA.

En ese orden de ideas, este fallador administrativo se pronunció por medio de Auto N° 302 del 18 de julio de 2025, el mismo que fue notificado a las partes, indicando que, modificaría el régimen de visitas determinado en el Auto de Apertura, en atención a una solicitud realizada por la apoderara judicial de la señora JULIANA, quien le indicó al Despacho que, las intervenciones y decisiones en el proceso solo deben ser entre los padres de LIAM, sin terceros intervinientes ni mediadores, de igual manera, señalo que no permitirá a terceras personas autorizaciones o facultades, que solo son los padres del niño. En ese sentido, esta agencia de familia procedió a modificar el régimen de visitas determinado de manera provisional a favor del menor LIAM y estableció que tanto la comunicación como la entrega del menor se realizaría únicamente entre ambos progenitores.

Retomando el curso del tramite del proceso, y tal como se había indicado en líneas anteriores la vocera judicial de la señora JULIANA ESCOBAR, dentro de sus memoriales arrimados al Despacho, había adjuntado una serie de pruebas documentales a favor de su poderdante, las mismas que no fue posible acceder a ellas, es por ello por lo que, la Comisaria de Familia por medio de Auto N° 301 del 22 de julio de 2025, requirió a la togada para que allegara dicho acervo probatorio en una memoria USB, para que las mismas si puedan ser valoradas. Dicho acto administrativo fue notificado por Estados y comunicado vía correo electrónico a la apoderada judicial.

Dentro del desarrollo de las etapas del proceso se realizó el acaecido 22 de julio de 2025, ante este Despacho Comisarial la audiencia de conciliación de manera virtual, con la finalidad de regular derechos y obligaciones a favor del menor LIAM SEBASTIAN, la misma fue acompañada por la Personera delegada en lo penal y familia y fue declarada fracasada; toda vez que, las partes no llegaron a un acuerdo; por tal motivo, se indicó en el acta que, la presente autoridad administrativa establecerá las obligaciones de manera provisional mediante Resolución motivada, que deberán cumplir los progenitores del niño LIAM SEBASTIAN, de conformidad a lo reglado en el parágrafo 1 del Art 4° de la Ley 1878 de 2018. De igual manera, es pertinente indicar que, tanto la señora JULIANA ESCOBAR como su apoderada no firmaron el dicho documento, es por ello por lo que, correspondió realizar una constancia por parte de la Comisaria de Familia, tal como se acredito en el plenario.

Subsiguientemente, el pasado 29 de julio del hogaño, la Dra. SANDRA ALZATE, radico un memorial referenciándolo como pronunciamiento, pruebas visitas y alimentos; es así como, este operador administrativo por medio de Auto N° 309 del 29 de julio de 2025, realizo un pronunciamiento, respecto al memorial denominado "pronunciamiento frente a la historia de atención" el mismo que fue notificado a las partes vía correo electrónico.

Consecutivamente, el día 30 de julio de 2025, la togada ALZATE MOLINA, presento recurso de reposición y subsidio de apelación en contra del Auto N° 309 del 29 de julio de 2025, los mismos que fueron resueltos por el Despacho, a través de Auto N° 337 del 6 de agosto del 2025, en el cual se repuso el numeral 2° y 7° del acto administrativo objetado; así mismo, no se concedió el recurso de alzada; toda vez que, considero este Despacho Comisarial, que ya habían sido

|  | **RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS** | Có... ...90 |
| | | V...Reso-S11508-2025 |
| | | **Fecha de Actualización:** 12/11/2019 |

resueltas las peticiones requeridas, al momento de reponer las decisiones descritas anteriormente. Dicha actuación fue notificada a las partes.

Continuadamente, la profesional en derecho SANDRA ALZATE, radico el 8 de agosto un memorial en la cual relaciono las pruebas que la progenitora pretende hacer valer dentro del proceso, así mismo, realizo un pronunciamiento respecto del Auto N° 337 del 6 de agosto del 2025. Posteriormente, el pasado 11 de agosto de 2025, la Dra. SANDRA ALZATE, presento memorial de recurso de reposición y subsidio de queja en contra del Auto N° 337 del 6 de agosto de 2025. Acto seguido, la Dra. VIVIANA ARANGO, radico una solicitud de nulidad parcial del Auto N° 277 del 4 de julio de 2025.

En consonancia a lo antes expuesto, la presente autoridad administrativa realizó un pronunciamiento respecto a las solicitudes realizadas por las apoderadas judiciales por medio de Auto N° 341 del 14 de agosto de 2025, en síntesis, se dispuso no reponer el acto administrativo atacado y concedió el recurso de queja, ordenando remitir el expediente al superior y por ultimo y no menos importante, se rechazo la solicitud de nulidad por improcedente y se dio traslado a la otra de la solicitud de nulidad. Dicha actuación fue notificada a las partes.

Seguidamente, la togada SANDRA ALZATE, arrimo memorial el día 20 de agosto de 2025, en el cual hace un pronunciamiento frente a la solicitud de nulidad presentada por la apoderada del progenitor.

Retomado la cuerda procesal, el pasado 27 de agosto de 2025, se recepcionaron las declaraciones de las señoras ANA ESCOBAR y LEIDI GARCIA, como pruebas testimoniales decretadas a favor de la señora JULIANA ESCOBAR y para el día 28 de agosto del hogaño, se recepcionó la declaración de la señora YANER MORALES; las mismas que reposan en el expediente.

De seguido, este Despacho Comisarial a través de acto administrativo N° 369 del 1 de septiembre, incorporó los memoriales presentados por la Dra. SANDRA ALZATE, vale decir, solicitud de pruebas nuevas aportadas por el denunciante Rad. 2025-022 y el pronunciamiento respecto a la solicitud de nulidad presentada por la Dra. VIVIANA ARANGO. Dicha actuación fue notificada a las partes.

Sucesivamente, el pasado 4 y 17 de septiembre del año en curso, la apoderada del progenitor del NNA, peticiono copia del expediente digital y arrimo respuesta de la capacidad económica del señor SEBASTIAN CORREA adjuntando una certificación de ingresos, expedida por la contadora pública LADY RUIZ, anexando su tarjeta profesional. Acto seguido, la referida togada VIVIANA, remitió el día 19 de septiembre de 2025, un correo electrónico, en el cual se adjuntó un acta de audiencia dentro del proceso de divorcio entre los señores JULIANA ESCOBAR y SEBASTIAN CORREA, emitida por el Juzgado Primero de Familia de Oralidad del municipio de Itagui.

Es así como, esta oficina de familia por medio de Auto N° 403 del 22 de septiembre de 2025, incorporó los memoriales presentados por la Dra. VIVIANA ARANGO, la misma que fue notifica por Estados.



| | | |
|---|---|---|
|  | **RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS** | Co... ...00 Ve...Reso-S11508-2025 **Fecha de Actualización:** 12/11/2019 |

Seguidamente, el transcurrido 29 de septiembre de 2025, se allegó la decisión emitida en Auto interlocutorio N° 374 del 29 de septiembre de 2025, por parte del Juzgado Segundo de Familia de Oralidad del municipio de Itagui, el mismo que resolvió el recurso de queja antes citado, declarando que estuvo bien denegado el recurso de apelación interpuesto por la apoderada de la progenitora.

Posteriormente, la Comisaria de Familia emitio el Auto N° 433 del 29 de septiembre del año en curso, en la cual procedió a incorporar una serie de pruebas documentales a favor del progenitor del NNA, dicha actuación fue notificada por Estados.

Subsiguientemente, el pasado 25 de octubre del 2025, se remitió en informe de plan de caso del menor LIAM, el cual fue elaborado por parte de la Fundacion Sanar, entidad que viene realizando el acompañamiento psicosocial a favor del citado NNA.

En desarrollo del proceso y en aras de garantizar el debido proceso tipificado en el Art. 29 de la Carta Política, el Despacho por medio de Auto N° 455 del 27 de octubre de 2025, realizo un control de legalidad; toda vez que, esta agencia de familia expidió el Auto N° 309 del 29 de julio de 2025, por medio de la cual se decretaron pruebas documentales a favor del señor SEBASTIAN CORREA MORALES, progenitor del menor LIAM, consistente en correos electrónicos y chats. Sin embargo, se cometió un error involuntario por parte del Despacho; toda vez que, se dio termino de traslado por únicamente tres (3) días, cuando debió hacerse por un término de cinco (5) días. Aclarado lo anterior, este Despacho Comisarial, procedió a correr traslado por el término de cinco (5) días hábiles, a las partes vinculadas en el proceso, de las pruebas decretadas en el Auto N° 309 del 29 de julio de 2025, consistente en las pruebas documentales que contiene (chats y correos electrónicos) de conformidad a lo establecido en el Art. 100 de la Ley 1098 de 2006, modificado por 4° de la Ley 1878 de 2018. De igual manera, se requiero a la Dra. SANDRA ALZATE y se decretaron pruebas documentales a favor de la progenitora y así mismo, pruebas de oficio, consistente en: A.) Informe psicosocial de seguimiento a las medidas de protección, adoptadas en el presente PARD, cuyo objetivo va encaminado a verificar las condiciones sociofamiliares, habitacionales, redes vinculares e identificación de elementos protectores y de riesgo que presenta el niño LIAM SEBASTIAN CORREA ESCOBAR y sus representantes legales. B.) Recepcionar entrevista al niño LIAM SEBASTIAN y declaración a sus progenitores; Ese orden de ese orden de ideas, se enviaron vía correo electrónico, las respectivas citaciones a los representantes legales. Dicha actuación fue notificada a las partes.

De manera subsiguiente, mediante Auto N° 471 del 29 de octubre de 2025, esta agencia administrativa fijó fecha para la audiencia de práctica de pruebas y fallo del presente proceso, para el día 14 de noviembre de 2025, a las 11:00am, la misma que fue notificada a los representantes legales del menor, el día 30 de octubre de 2025; en cuanto a la comunicación al ministerio público se efectuó en la misma fecha.

Paralelamente, la togada SANDRA ALZATE, allego memorial vía correo electrónico el día 29 de octubre de 2025, en el cual peticiono tener en cuenta la prueba traslada del proceso de violencia en el contexto familiar que de manera simultanea se adelanta ante este Despacho bajo el Rad. 028-25; y de igual manera, solicitó copia del expediente digital e indicó su preocupación de que



| | RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS | Có... ...90 Ve...Revo-511500-2025 Fecha de Actualización: 12/11/2019 |
| --- | --- | --- |

el menor LIAM sea entrevistado nuevamente, toda vez que, esto conllevaría a una completa revictimización del NNA.

Así las cosas, este operador administrativo por medio de Auto N° 478 del 30 de octubre de 2025, realizo un pronunciamiento, autorizando copia del expediente PARD 022-25, y se le clarificó a la togada que dicha entrevista al NNA obedece al seguimiento de las medidas de protección adoptadas en el Auto de Apertura, a lo cual se requería indagar con cada uno de los actores vinculados al proceso, y en especial con el menor LIAM, quien es la motivación del trámite. En cuanto a la prueba trasladada, la misma, fue negada y cuyo sustento fue señalado en el propio acto administrativo. Dicha actuación fue notificada a las apoderadas judiciales.

Sucesivamente, la Dra. ALZATE MOLINA, allegó un memorial el día 4 de noviembre de 2025, en el cual dio cumplimiento al requerimiento solicitado en el Auto N° 455 del 27 de octubre de 2025, respecto a la traducción de una serie de pruebas documentales decretadas a favor de la progenitora del NNA. De manera paralela, y para la fecha antes mencionada, nuevamente la aludida profesional en derecho arrimo un memorial, en el cual realizo un pronunciamiento con relación a las pruebas documentales decretadas a favor del progenitor del menor LIAM. Y por último, y no menos importante, la togada presento para la misma fecha, un recurso de reposición y subsidio de apelación frente al Auto N° 455 del 27 de octubre de 2025.

Seguidamente, el día 5 de noviembre de 2025, la apoderada de la señora JULIANA ESCOBAR, solicito suspensión de entrevista del menor LIAM dentro de la etapa de seguimiento, aduciendo que para la fecha de la diligencia de seguimiento, vale decir, 6 de noviembre de 2025, a las 9:00am; no podría acompañar a su poderdante, la misma que requería de su acompañamiento para todas las diligencias que se desarrollan en el proceso; ya que, para el día en mención, ya tenía agendada otra diligencia programada para el día 6 de noviembre a las 10:00am, en el Juzgado 23 de Familia de Oralidad de Bogotá DC., acreditando tal suceso.

Es importante señalar que, el día 5 de noviembre de 2025, el señor SEBASTIAN CORREA, compareció al despacho y rindió su declaración dentro del seguimiento a las medidas de protección adoptadas en el auto de apertura, a favor del menor de quien se litiga.

En consecuencia, a lo antes expuesto, la presente autoridad, se pronunció por medio de Auto N° 481 del 6 de noviembre de 2025, indicando en lo que respecta a la solicitud de pruebas a favor de la señora JULIANA ESCOBAR, todas fueron decretadas, con excepción de la prueba trasladada. De igual manera, se le clarificó a la profesional en derecho que el Auto atacado no se realizó ningún pronunciamiento respecto a la negación de la prueba trasladada; toda vez que, la misma, se efectuó por medio del Auto N° 478 del 30 de octubre de 2025, y en dicho acto administrativo se justificó el por qué se negó dicha prueba. Adicional a ello, nuevamente se le manifestó a la vocera judicial que la solicitud de revictimización del menor por la realización de la entrevista de seguimiento ya fue resuelta por medio de Auto N° 478 del 30 de octubre de 2025, y en el entendido que es una prueba de oficio, la cual no admite recurso alguno, tal como lo reseña el Art. 169 del CGP. Así mismo, se indico en dicho acto administrativo, que la solicitud de suspensión del proceso era improcedente; ya que las causales de suspensión de un proceso son de manera taxativa y están tipificadas en el Art. 161 del CGP. En cuanto a la petición de reprogramar la diligencia de entrevista del NNA, se accedió a la misma, y se fijo como fecha el

 

| | RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS | Có~~...~~90 |
|---|---|---|
| | | Vu~~MReso-511508-2025~~ |
| | | Fecha de Actualización: 12/11/2019 |

día 12 de noviembre de 2025, a las 8:30am; adicional a esto, se incorporó los certificados de curso pedagógico realizados por los señores SEBASTIAN CORREA y JULIANA ESCOBAR, dando así cumplimiento a la directriz dada por esta agencia de familia. Y por último, en lo relativo al recurso de apelación instaurado y dado a que el mismo fue presentado de manera oportuna, dentro del término señalado en el Art. 31 del Dcto 2591 de 1991, esta agencia de familia concedió el recurso de alzada y remitió el expediente al Juez de Familia de esta municipalidad. Dicha actuación fue notificada a las voceras judiciales.

Posteriormente, la abogada de la progenitora del menor, presento un memorial vía correo electrónico el día 7 de noviembre de 2025, denominado "incidente de incumplimiento" quien, a su vez, realizo varias peticiones en su misiva; consecutivamente, la Dra. SANDRA ALZATE, radicó nuevamente el día 10 de noviembre de 2025, una serie de solicitudes, consistentes en: peticiono los informes de la Fundacion Sanar, presenta recurso de reposición y en subsidio de apelación frente al Auto N° 481 del 6 de noviembre de 2025.

Es tal sentido, este operador administrativo, se manifestó por medio de Auto N° 491 del 11 de noviembre de 2025, indicando que la solicitud de incidente por incumplimiento será resuelta en la audiencia de practica de pruebas y fallo; ya estando en la misma este fallador administrativo procederá a respuesta a la solicitud, declarándola como IMPROCEDENTE, de conformidad a lo reglado en el numeral 2 del Art. 41 del CGP; toda vez que, en la cuerda procesal de los PARD no indica un sustento normativo que de aplicabilidad a dicha solicitud; ya que el trámite incidental por presunto incumplimiento a las medidas de protección esta regladas por la Ley 294 de 1996 y cuya naturaleza obedece a los tramite administrativos de violencia en el contexto familiar, que se remite al Dcto 2191 de 1991 (decreto Ley de Tutela) y no al PARD cuyo marco normativo en la Ley 1098 de 2006, modificada por la Ley 1878 de 2018.

Ahora bien, en lo que respecta a las peticiones inmersas en la solicitud de incidente por incumplimiento; en cuanto a "no sacar" al menor LIAM del municipio de Itagüí, si bien es cierto, en los actos administrativos aludidos, vale decir, Auto N° 277 del 4 de julio de 2025, modificado por el Auto N° 302 del 18 de julio de 2025, se había indicado dicha restricción; también lo es que, y como es de conocimiento por las partes inmersas en el plenario, los representantes legales dentro del proceso de divorcio, de mutuo acuerdo lograron regularon derechos y obligaciones a favor de su prohijado, tal como quedo acreditado en el Acta de audiencia del 16 de septiembre de 2025, proferida ante el Juzgado Primero de Familia de Oralidad del municipio de Itagui, allí regularon cuota de alimentos, gastos de salud, educación, vestuario y régimen de visitas en beneficio del menor LIAM; así las cosas, y en el entendido que dichos asuntos no hacen tránsito a cosa juzgada, es decir, pueden ser modificados a futuro, corresponderá a este operador administrativo convalidar dicho acuerdo; toda vez que, el mismo garantiza los derechos fundamentales del menor y que lo allí decidido se produjo obrando en interés superior del NNA, reglado en el Art. 8 de la Ley 1098 de 2006, en armonía con el Art. 9 de la norma en mención, que hace referencia a la prevalencia de derechos y por tal motivo, no quedará más para esta agencia de familia, que dejar sin efectos legales las restricciones emitidas en los Autos N° 277 del 4 de julio de 2025 y N° 302 del 18 de julio de 2025 y proceder a ratificar lo decidido en la reseñada acta de audiencia emitida por Juzgado Primero de Familia de Oralidad de esta municipalidad.

|  | **RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS** | Có̶̶̶̶90 |
|---|---|---|
| | | V̶̶R̶̶̶-S̶1̶508-2025 |
| | | **Fecha de Actualización: 12/11/2019** |

En lo que tiene que ver, con los nuevos hechos sobrevinientes expuestos en la solicitud de incidente por incumplimiento, en relación con lo expuesto, es pertinente destacar que, aunque la representante aporto material probatorio por intermedio de su apoderada judicial, los hechos señalados requerían de ser verificados directamente con el menor; sin embargo, debido a las constantes oposiciones a la realización de la entrevista de seguimiento, así como a las negativas frente a los mismos y a los reportes de incapacidad médica del niño durante este periodo, no fue posible corroborar la información aportada. Esta situación limito al equipo psicosocial para emitir una valoración concluyente respecto a los hechos descritos, pese a su relevancia dentro del presente seguimiento.

Es pertinente reiterar la imposibilidad de adelantar el seguimiento, así como la ocurrencia de los nuevos hechos, de manera directa con el menor LIAM CORREA ESCOBAR, pese a que desde el despacho se implementaron diversas estrategias orientadas a garantizar la realización de la entrevista. En múltiples oportunidades se efectuaron citaciones formales para que el niño compareciera ante la Comisaría, y posteriormente, con el fin de facilitar el proceso ante las dificultades de salud reportadas, el equipo psicosocial se desplazó hasta la vivienda del menor. Dichas actuaciones se encuentran debidamente registradas dentro del expediente PARD 022-2025.

Y por último en lo que respecta a la toma de decisiones a favor del menor LIAM SEBASTIAN, se hará necesario exhortar a ambos progenitores, para que éstos, tomen las decisiones a favor de su prohijado de manera consensuada, procurando siempre el interés superior y el equilibrio emocional del niño. En este sentido, se hace necesario que ambos padres mantengan una comunicación efectiva, oportuna y respetuosa, de modo que puedan coordinar y acordar conjuntamente las dinámicas que impactan su desarrollo y bienestar integral. En ese sentido se le recuerda el principio de responsabilidad parental, que según el artículo 14 de la Ley 1098 de 2006, se entiende como: *la obligación inherente a la orientación, cuidado, acompañamiento y crianza de los niños, las niñas y los adolescentes durante su proceso de formación. Esto incluye la responsabilidad compartida y solidaria del padre y la madre de asegurarse que los niños, las niñas y los adolescentes puedan lograr el máximo nivel de satisfacción de sus derechos.* Es decir, que más allá del sostenimiento económico, también es importante realizar un acompañamiento activo en la crianza y educación del NNA.

Continuando con el desarrollo del presente proceso, es pertinente indicar que, el pasado 11 de noviembre del año en curso, esta agencia de familia oficio a la Institución Educativa SKOLMI, peticionando información del proceso educativo del menor LIAM, lo cual hasta la fecha no se ha obtenido respuesta a la misiva.

El pasado 12 de noviembre del año en curso, este Despacho recibió una notificación proveniente del Juzgado Segundo Civil Municipal de Oralidad de Itagüí, mediante la cual se informó sobre la acción de tutela interpuesta por parte de la señora JULIANA ESCOBAR RESTREPO y en contra de este Despacho Comisarial. Acto seguido, el 13 de noviembre se notificó a esta Agencia de Familia el Auto que negó la solicitud de medida provisional. En consecuencia, a lo antes expuesto, el acaecido14 de noviembre de la anualidad, este Despacho emitió la respectiva respuesta de la acción constitucional interpuesta y finalmente, el referido Juzgado profirió la

|  | **RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS** |  Código: ... 90 |
| --- | --- | --- |
| | | Versión: ...511508-2025 |
| | | **Fecha de Actualización: 12/11/2019** |

Sentencia N° 647 del 25 de noviembre de 2025, declarando improcedente la demanda de tutela instaurada.

Subsiguientemente, la señora JULIANA ESCOBAR y el menor LIAM SEBASTIAN, fueron citados el día 12 de noviembre de 2025, ante esta agencia administrativa, con la finalidad de recepcionarle una declaración a la progenitora y adelantar una entrevista al menor, dentro del análisis de seguimiento a las medidas de protección adoptadas en el plenario. En ese sentido, es pertinente indicar que, la entrevista al NNA no se logro materializar debido a la inasistencia del citado menor, cuando se indagó por éste, afirmó la progenitora que se encontraba enfermo, pero ésta, no allego prueba sumaria que acreditara dicha situación, tal como asentó, en la constancia secretarial elaborada por el Despacho.

Siendo, así las cosas, el equipo psicosocial adscrito a esta dependencia se desplazó ese mismo día, vale decir, 12 de noviembre, a las (3:47pm) al domicilio del menor, con el objetivo de obtener una entrevista de seguimiento con el menor LIAM, así como, verificar los nuevos hechos sobrevinientes aludidos en la solicitud de tramite incidental, la cual no se logró llevar a cabo; toda vez que, los porteros de la unidad residencial donde vive el menor y su progenitora informaron que no se encontraba nadie en el apartamento, dejando dicha novedad reportada en una constancia secretarial. Ante tal suceso, el día 12 de noviembre de 2025, el Despacho requirió a la señora JULIANA ESCOBAR, por conducto de su apoderada judicial, vía correo electrónico para que compareciera en compañía de su prohijado el día 13 de noviembre de 2025, a las 10:30am.

Ante lo expuesto anteriormente, la apoderada judicial de la señora JULIANA ESCOBAR, arrimo vía correo electrónico el día 13 de noviembre de 2025, en horas de la mañana (8:01am) una incapacidad medica del menor LIAM SEBASTIAN expedida por la Clínica Las Américas, que comprende los periodos desde 11 al 15 de noviembre de 2025, en tal sentido, se hace constancia que la progenitora no se hizo presente a la diligencia fijada en compañía de su descendiente, pero se clarificó que se había arrimado al Despacho con posterioridad la incapacidad médica.

Subsiguientemente, la Dra. SANDRA ALZATE, presento vía correo electrónico el día 13 de noviembre del presente año, dos memoriales en el cual acreditó una incapacidad medica de la aludida togada y asimismo, una solicitud de aplazamiento aduciendo de la audiencia, hasta que no se resolviera el recurso de apelación y el incidente por incumplimiento de las medidas de protección, no era posible continuar con el proceso; adicional a ello, también refirió la vocera judicial que se encontraba incapacitada y por tal motivo, su poderdante no contaba con otro profesional de confianza que la asistiera en la audiencia de practica de pruebas y fallo.

Continuando con el desarrollo del proceso, el señor SEBASTIAN CORREA, remitió vía correo electrónico el día 13 de noviembre de 2025, una serie de documentos (audio de la profesora del menor LIAM, documentos en formato PDF y conversaciones vía correo electrónico con la progenitora del infante)



| | RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS | Código: [QR]<br>VdReso-511508-2025<br>**Fecha de Actualización:** 12/11/2019 |
|---|---|---|

Siguiendo con la línea cronológica, este fallador administrativo por medio de Auto N° 492 del 13 de noviembre de 2025, se pronuncio ante los memoriales radicados por la Dra. SANDRA ALZATE, y el señor SEBASTIAN CORREA, señalando que, en aras de garantizarle el derecho de postulación y defensa técnica, de conformidad a lo tipificado en el Art 73 del C.G.P; y ante la incapacidad medica acreditada, se dispuso en suspender la diligencia de practica de pruebas y fallo y se dispuso reprogramar la misma. De igual manera, se le clarifico a la apoderada que el recurso de apelación concedido por el Despacho fue en efecto devolutivo, por medio de Auto N° 481 del 6 de noviembre del año en curso y en dicho acto administrativo se sustento que se continuaría con el tramite del proceso, conforme al Art. 323 del C.G.P. En cuanto a la solicitud de "tramite incidental", se le indicó que la misma seria analizara y resuelta en la audiencia de practica de pruebas y fallo. Y por último y no menos importante, se reprogramó la entrevista de seguimiento del menor LIAM para el día 19 de noviembre de 2025, a las 8:00am. Dicho acto administrativo fue notificado a los apoderados judiciales, tal como consta en el expediente.

Consecutivamente, la Dra. SANDRA ALZATE, radicó un memorial vía correo electrónico, el 14 de noviembre de 2025, titulado recurso de reposición y queja frente al Auto N° 491 del 11 de noviembre de 2025. De manera paralela, repite la aludida abogada, arrimando otro memorial en la misma fecha, peticionando se fije una nueva fecha para segunda entrevista del menor LIAM; toda vez que, la profesional tenia programada una diligencia para la misma fecha a las 9:00am en el Juzgado tercero de Familia de Oralidad del Circuito de Bello, acreditando dicha situación.

Posteriormente, la Dra. VIVIANA ARANGO, radico a este Despacho, una solicitud vía correo electrónico el día 18 de noviembre de 2025, manifestando tener conocimiento de los recursos de apelación interpuestos por la apoderada de la señora JULIANA ESCOBAR, atendiendo tener acceso al expediente digital. Así mismo, indicó que renunciaba a términos y no realizaría pronunciamiento al respecto.

Paralelamente, la profesional en derecho SANDRA ALZATE, presento una solicitud vía correo electrónico a este Despacho Comisarial el día 19 de noviembre de 2025, adjuntando una incapacidad medica del menor LIAM SEBASTIAN expedida por la EPS Sura, entre los periodos del 19 al 21 de noviembre de 2025.

A lo antes expuesto, la presente autoridad administrativa se pronuncio por medio de Auto N° 497 del 19 de noviembre de 2025, el Despacho accedió a la solicitud de aplazamiento de la diligencia del menor LIAM, y requirió a la togada para que en un término de (3) días remitiera copia de la historia clínica del aludido infante. En lo que respecta al recurso de reposición la Comisaria de Familia se ratificó en su decisión adoptada por medio de Auto N° 491 del 11 de noviembre del hogaño, por tal motivo no repuso su decisión. En cuanto al recurso de queja, este operador administrativo procedió a darle tramite al mismo, concediendo dicho recurso y remitiendo el proceso al superior, vale decir, Juez de Familia de esta municipalidad, para los fines pertinentes, de conformidad a lo establecido en el Art. 352 y 353 del C.G.P. Notificando dicho acto administrativo a las partes procesales.



| | **RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS** |  Có... Ve...00511508-2025 |
| --- | --- | --- |
| | | **Fecha de Actualización:** 12/11/2019 |

De otra parte, el día 18 de noviembre del presente año, fue allegado a este Despacho, por parte de la Fundación Sanar, un reporte de novedad dentro del proceso psicosocial que se adelanta en dicha entidad en favor del menor LIAM SEBASTIÁN, en el cual se reportó una llamada telefónica por parte de la apoderada de la señora JULIANA ESCOBAR. En continuidad con lo anterior, el 24 de noviembre del mismo año, se remitió un reporte adicional relacionado con el caso en mención, en el cual se informó que todavía no había sido posible realizar la visita domiciliaria del progenitor.

Siguientemente, la Dra. SANDRA ALZATE, remitió el día 20 de noviembre de 2025, una solicitud vía correo electrónico de la Comisaría de Familia, adjuntando historia clínica y peticionando se le enviara el acto administrativo que ordenó o decretó la visita sorpresa al domicilio de la señora JULIANA ESCOBAR y de su descendiente, generando así una violencia institucional. En ese orden de ideas, la presente autoridad administrativa dio respuesta vía correo electrónico el día 21 de noviembre del año en curso, indicándole que, el Despacho Comisarial que por medio de Auto N° 478 del 30 de octubre de 2025, había decretado una prueba de oficio consistente en la realización de una entrevista al menor LIAM SEBASTIAN, el objetivo de realizar el seguimiento a las medidas de protección ordenadas en el auto de apertura a favor de éste y dado a los múltiples inconvenientes que se han presentado en aras a materializar dicha entrevista se optó en que el equipo psicosocial se desplazara al domicilio del menor, para así, poder practicar la diligencia ordenada en el proceso, relativa a la realización de una entrevista al menor LIAM SEBASTIAN. En tal sentido, se le clarificó a la profesional que en ningún momento se buscaba realizar una victimización institucional hacia el menor; sino todo lo contrario, se pretende tener un acercamiento con éste, para que exprese de manera tranquila al Despacho como se ha sentido y como ha sido el relacionamiento de éste con sus progenitores, analizando así, las medidas de protección ordenadas en el Auto de Apertura.

Con lo antes expuesto, es pertinente indicar que, el día 21 de noviembre de 2025, nuevamente el equipo interdisciplinario adscrito a esta dependencia se dirigió al domicilio de la señora JULIANA ESCOBAR y su descendiente, con el objetivo de mirar la posibilidad de materializar la entrevista al NNA dentro del seguimiento a las medidas de protección y de igual manera, corroborar la información suministrada dentro de la solicitud de tramite incidental, la misma que no fue frutífera, dada la oposición de la progenitora del menor y de su apoderada judicial; a lo cual, causo sorpresa a la presente autoridad, el porqué de la negativa a que se surta dicha diligencia, la cual va encaminada a verificar las condiciones actuales del menor objeto del proceso y constatar los nuevos hechos sobrevinientes. Es por ello por lo que, le corresponde a esta agencia de familia, adoptar las acciones encaminadas a verificar las circunstancias actuales que presenta el NNA y dejando constancias en el proceso en las cuales se acredite que se agotó todas las instancias para materializar dicha diligencia. Lo antes expuesto, quedo consignado en la respectiva constancia secretarial inmersa en el proceso.

De manera subsiguiente, el pasado 24 de noviembre de 2025, la Dra. SANDRA MARIA ALZATE MOLINA, allegó al Despacho documento titulado *"pronunciamiento frente a pruebas aportadas por el denunciante y frente al informe de sanar de acuerdo con el término otorgado mediante auto N° 492 de fecha 13*



| | RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS | Código: ... 90 |
| --- | --- | --- |
| | | VulReso-511506-2025 |
| | | Fecha de Actualización: 12/11/2019 |

de noviembre de 2025. *Notificado el día 14 de noviembre de 2025"* y adicional a ello, aportó correos electrónicos y chats entre los progenitores del menor LIAM SEBASTIAN.

En ese sentido, y dada la instancia procesal inmersa, este Despacho Comisarial expidió el Auto N° 503 del 24 de noviembre de 2025, por medio de la cual, se reprogramó la audiencia de práctica de pruebas y fallo del presente proceso, para el día 28 de noviembre de 2025, a las 2:00pm, la misma que fue notificada a los representantes legales del menor, el día 24 de noviembre de 2025 y comunicación al ministerio público en la misma fecha.

Consecutivamente, y para la aludida fecha, vale decir, 24 de noviembre de 2025, nuevamente la profesional en derecho SANDRA ALZATE, allegó memorial peticionando una copia digital del expediente hasta la fecha. Acto seguido, la apoderada judicial VIVIANA ARANGO, radicó una solicitud vía correo electrónico el 26 de noviembre de 2025, peticionando la remisión del expediente integro.

Como consecuencia a lo antes expuesto, la Comisaria de Familia por medio de Auto N° 510 del 26 de noviembre, accedió a lo peticionado por las mencionadas voceras judiciales y autorizo una copia digital del expediente bajo el Rad. 022-25 y remitió una copia a los extremos procesales, tal como se acredita en el cuaderno procesal.

Por último y no menos importante, vale la pena precisar que, cada una de las actuaciones emitidas por este despacho comisarial, han sido notificadas a los representantes legales del menor, garantizándoles el derecho de contradicción, conforme a lo consagrado en el Art. 110 del C. G. del P., salvaguardo de esta forma el derecho de defensa, principio integrador del debido proceso consagrado en el Art. 29 C. P; tal como se acredita en el cuaderno procesal.

PRUEBAS Y ANALISIS:

DOCUMENTAL:

- Solicitud de verificación de derechos a favor del niño LIAM SEBASTIAN CORREA ESCOBAR.
- Auto que avoca conocimiento y ordena verificación de derechos a favor del niño LIAM SEBASTIAN CORREA ESCOBAR.
- Acta de verificación de derechos a favor del niño LIAM SEBASTIAN CORREA ESCOBAR.
- Fotocopia del registro civil del niño LIAM SEBASTIAN CORREA ESCOBAR.
- Fotocopia del certificado de salud del niño LIAM SEBASTIAN CORREA ESCOBAR.
- Fotocopia de la tarjeta de identidad del niño LIAM SEBASTIAN CORREA ESCOBAR.
- Certificado de estudio del niño LIAM SEBASTIAN CORREA ESCOBAR.
- Consentimiento informado de la madre del niño LIAM SEBASTIAN CORREA ESCOBAR, para la realización de valoración psicológica.
- Informe de valoración psicológica del niño LIAM SEBASTIAN CORREA ESCOBAR.
- Informe de visita domiciliaria.
- Fotocopia de la cedula de los señores SEBASTIAN CORREA y JULIANA ESCOBAR.



| | RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS |  Cod... Ve...R...-511508-2025 Fecha de Actualización: 12/11/2019 |
|---|---|---|

- Entrevista del niño LIAM SEBASTIAN CORREA ESCOBAR.
- Declaraciones de los señores SEBASTIAN CORREA y JULIANA ESCOBAR.
- Documentos aportados por los señores SEBASTIAN CORREA y JULIANA ESCOBAR.
- Auto de apertura del proceso de restablecimiento de derechos a favor del niño LIAM SEBASTIAN CORREA ESCOBAR.
- Notificación por aviso del PARD a los representantes legales del del niño LIAM SEBASTIAN CORREA ESCOBAR.
- Comunicación de apertura de PARD a ministerio público.
- Solicitud de cupo ante ICBF para intervención de apoyo psicosocial a favor del niño LIAM SEBASTIAN CORREA ESCOBAR.
- Boleta de ingreso a la Fundacion Sanar.
- Acta de audiencia de conciliación fracasada.
- Solicitudes radicadas por parte de los representantes legales.
- Actuaciones administrativas que resolvieron solicitudes por parte de los representantes legales.
- Auto que fija fecha para audiencia de práctica de pruebas y fallo.
- Notificación por aviso a los progenitores del auto que fija fecha para audiencia de práctica de pruebas y fallo.
- Comunicación de la audiencia de práctica de pruebas y fallo a ministerio público.
- Pruebas documentales decretadas a favor de la señora JULIANA ESCOBAR (consulta por pediatría, recomendación expedida por la Dra. ALINA RESTREPO VELEZ, resumen de facturación expedida por ASDESILLA escuela de equitación, fotos, chats, reporte de incidente doméstico en New York, EE. UU, con su respectiva traducción, certificado de traducción, declaración de renta a nombre del señor SEBATIAN CORREA MORALES del año 2023 debidamente traducida, certificado de traducción, registro de matrimonio, certificado de naturalización; prueba testimonial a favor de la señora JULIANA ESCOBAR RESTREPO, consistente en las declaraciones de los señores ANA ESCOBAR y JAFET DOMINGUEZ, Pasaporte americano del menor LIAM SEBASTIAN, constancia de matrícula del colegio Anglo Español, demanda de divorcio instaurado por el señor SEBASTIAN CORREA en Colombia, registro civil de matrimonio de los señores SEBASTIAN CORREA y JULIANA ESCOBAR, registro civil de nacimiento del menor LIAM SEBASTIAN, denuncia instaurada por la señora JULIANA ante la fiscalía por el delito de violencia intrafamiliar, contestación de demanda de divorcio y demanda de reconvención, chats, informe de terapeuta familiar fechado del 05 de diciembre de 2024, fotos del menor LIAM (en diferentes entornos sociales, familiares, deportivos, etc.) así como fotografías del señor SEBASTIAN CORREA (en su entorno familiar y social), documentos de trámites de divorcio en EEUU, traducción, certificado de traducción, carta de Promise Christian Academy, reporte de calificaciones del menor LIAM, traducción y certificado de traducción, relación de gastos en EEUU del menor LIAM SEBASTIAN y deudas en EEUU de la señora JULIANA, certificado laboral de la señora JULIANA, constancia expedida por el psicólogo Jorge Humberto Cadena Solano, certificado de asistencia a citas médicas del menor LIAM SEBASTIAN, certificados de estudios de la señora JULIANA, correos electrónicos, certificado de estudio del menor LIAM en EEUU, certificado de asistencia del menor LIAM a campamento de verano en el año 2024, medida de protección otorgada por este



| | RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS | Có... |
| --- | --- | --- |
| | | V...Reso-S14506-2025 |
| | | Fecha de Actualización: 12/11/2019 |

despacho a la señora JULIANA dentro de proceso administrativo de violencia en el contexto familia, otorgamiento de poder sin firmar, certificado de nacimiento de LIAM en EEUU traducido, certificado de seguro SURA, matrícula del menor LIAM en el centro educativo Skolmi; contrato de arrendamiento en NY; gastos de abogados en los que ha incurrido la señora JULIANA ESCOBAR; hoja de vida de la señora JULIANA ESCOBAR; seguro médico de la señora JULIANA ESCOBAR en EEUU inactivo desde septiembre de 2024.)

- Pruebas documentales decretadas a favor del señor SEBASTIAN CORREA, prueba documental a favor del progenitor del menor, el señor SEBASTIAN CORREA, consistente en dos (2) memorias USB (videos, fotos, Acta de conciliación N° 00207 realizada ante el centro de conciliación "Avancemos", declaración extra juicio N° 1108, correos electrónicos, comprobantes de pago, certificado de salud del menor LIAM SEBASTIAN, memorando y orden emitido por el tribunal de distrito de los Estados Unidos, distrito este de Nueva York, orden de retorno emitida por el tribunal de distrito de los Estados Unidos, distrito este de Nueva York, notificación, conclusiones de hecho y conclusiones de la ley 24 emitido por el tribunal de distrito de los Estados Unidos, distrito este de Nueva York, juicio emitido por el tribunal de distrito de los Estados Unidos, distrito este de Nueva York, orden de desestimación, medida de protección dentro de proceso VIF 028-2025, documento de Word titulado "línea de tiempo") y acción de tutela radicado 05360408800320250025600; los archivos consistentes en correos electrónicos y chats; así como la prueba testimonial, consistente en las declaraciones de los señores BIBIANA MORALES, identificada con cédula de ciudadanía N° 42.797.773 y NICOLAS STING CORREA MORALES, identificado con cédula de ciudadanía N° 1.039.452.144.

- Prueba de oficio decretas por esta oficina de familia.

## FUNDAMENTOS JURIDICOS

El Art. 44 de la Constitución Política de Colombia, refiere sobre los derechos fundamentales de los cuales serán protegidos contra toda forma de abandono, violencia física o moral, secuestro, venta, abuso sexual, explotación laboral o económica y trabajos riesgosos. Gozarán también de los demás derechos consagrados en la Constitución, en las leyes y en los tratados internacionales ratificados por Colombia. La familia, la sociedad y el Estado tienen la obligación de asistir y proteger al niño para garantizar su desarrollo armónico e integral y el ejercicio pleno de sus derechos. Cualquier persona puede exigir de la autoridad competente su cumplimiento y la sanción de los infractores. Los derechos de los niños prevalecen sobre los derechos de los demás.

Que la Ley 1098 de 2006 – Código de la Infancia y de la Adolescencia, tiene como objeto establecer normas sustantivas y procesales para la protección integral de los niños, las niñas y los adolescentes, garantizar el ejercicio de sus derechos y libertades consagrados en los instrumentos internacionales de Derechos Humanos, en la Constitución Política y en las leyes, así como su restablecimiento. Dicha garantía y protección será obligación de la familia, la sociedad y el Estado.




| | RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS | Co... ...90 Ve...-S11508-2025 Fecha de Actualización: 12/11/2019 |
|---|---|---|

Que, de acuerdo a ello, según el mismo estatuto, el Estado es el contexto institucional en el desarrollo integral de los niños, las niñas y los adolescentes, en sus distintitos niveles territoriales, nacional departamental y municipal, actuando bajo los preceptos convencionales internacionales suscritos y ratificados por el Estado Colombiano.

Es fundamental, trabajar por el restablecimiento de los derechos de los niños en concurso con la familia y la sociedad, pues de otro modo, no se estaría empoderando a los padres para asumir responsablemente su papel, si no, que nos convertiríamos en un Estado asistencialista o peor aún, en un Estado tirano y rígido que no da la posibilidad a sus administrados de ejercer sus derechos y cumplir sus obligaciones, en especial, con la responsabilidad parental – Arts. 10 y 14 de la ley 1098 de 2006.

Según los Arts. 83 y 86 de la Ley de la Infancia y la Adolescencia, las Comisarías de Familia son entidades municipales de carácter administrativo, encargadas de prevenir y restablecer los derechos de los niños, niñas y adolescentes dentro del contexto de violencia intrafamiliar, de igual manera, el Comisario de Familia como servidor público debe adelantar de oficio o a solicitud de parte, todas las acciones pertinentes para prevenir, proteger, garantizar y restablecer los derechos de los niños, niñas y adolescentes, adoptando para ello, las medidas de restablecimiento en caso de amenaza o vulneración de sus derechos.

Igualmente, la Ley de la Infancia y la Adolescencia establece la Responsabilidad Parental, la cual se traduce en el deber de los padres de orientar, educar y acompañar en la crianza a los hijos, durante el proceso de formación, es decir, en todos los ciclos de vida y desarrollo, y los niños, niñas y adolescentes tendrán el deber de cumplir las obligaciones cívicas y sociales que correspondan a cada ciclo de desarrollo.

En el Art. 6° *ibídem* establece: "Las normas contenidas en la Constitución Política y en los tratados o convenios internacionales de Derechos Humanos ratificados por Colombia, en especial la Convención sobre los Derechos del Niño, harán parte integral de este Código, y servirán de guía para su interpretación y aplicación. En todo caso, se aplicará siempre la norma más favorable al interés superior del niño, niña o adolescente..."; así mismo el Art. 7° se establece la Protección Integral, donde se reconoce a los niños, niñas y adolescentes como sujetos de derechos y se establece la prevención, la garantía, el cumplimiento y el restablecimiento de los mismos; en armonía a lo reglado en el Art. 8° de la precitada Ley consagra el principio del Interés Superior de los niños, niñas y adolescentes, el cual obliga a todas las personas a garantizar la satisfacción integral y simultánea de todos sus Derechos Humanos; en concordancia con el Art. 10° se plantea la corresponsabilidad, que es la concurrencia de actores y acciones para garantizar el ejercicio de los derechos de los niños, las niñas y los adolescentes, o sea, que la familia, la sociedad y el Estado son corresponsales de manera simultánea.

Y por último se hace menester tener en cuenta los desarrollado en el Art. 39 de la Ley de Infancia y Adolescencia reza " Son obligaciones de la familia para garantizar los derechos de los niños, las niñas y los adolescentes: 1. protegerlos contra cualquier acto que amenace o vulnere

|  | **RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS** | Código: [ilegible] V[ilegible]R650-514508-2025 |
|---|---|---|
| | | Fecha de Actualización: 12/11/2019 |

su vida, su dignidad y su integridad personal; 4. Formarles, orientarles en el ejercicio de sus derechos y responsabilidades y en el desarrollo de su autonomía; 5. Abstenerse de realizar todo acto y conducta que implique maltrato físico, sexual o psicológico y asistir a los centros de orientación y tratamiento cuando sea requerida.

Conforme a Sentencia T 884 de 2011, la Corte hace alusión al interés superior del NNA y planteó unos criterios generales iniciales para orientar a las autoridades en la determinación del interés superior en cada caso concreto; la determinación de estos criterios partió del reconocimiento de que las autoridades administrativas y judiciales encargadas de determinar el contenido del interés superior de los menores en casos particulares cuentan con un margen de discrecionalidad importante para evaluar, en aplicación de las disposiciones jurídicas relevantes y en atención a las circunstancias fácticas de la menor de edad implicada, cuál es la solución que mejor satisface dicho interés. Al mismo tiempo, la definición de esos criterios, surgió ante la necesidad de recordar los deberes constitucionales y legales que tienen las autoridades en relación con la preservación del bienestar integral de los niños, niñas y adolescentes, que requieren de su protección, los cuales obligan a los jueces y funcionarios administrativos en cuestión a aplicar un grado especial de diligencia, celo y cuidado al momento de adoptar sus decisiones, mucho más tratándose de niños de temprana edad, cuyo proceso de desarrollo puede verse afectado en forma definitiva e irremediable por cualquier decisión que no atienda a sus intereses y derechos.

De conformidad con la regla precitada, en la misma sentencia, esta Corporación redefinió los criterios jurídicos generales a los que debe acudirse, para adoptar cualquier decisión en casos como el presente: (1) la garantía del desarrollo integral del niño, niña o adolescente; (2) la preservación de las condiciones necesarias para el pleno ejercicio de los derechos fundamentales del niño, niña o adolescente; (3) la protección del niño, niña o adolescente frente a riesgos prohibidos; (4) el equilibrio con los derechos de los parientes, biológicos o no, sobre la base de la prevalencia de los derechos del niño, niña o adolescente; y (5) la necesidad de evitar cambios desfavorables en las condiciones presentes del niño, niña o adolescente involucrado. La aplicación de estos criterios, en el caso bajo examen, se realizará cuando se analice el caso concreto.

Ahora bien, descendiendo al caso *sub exámine*, se hace necesario analizar si las decisiones tomadas por este Despacho en lo concerniente a la asignación de manera provisional de la custodia y cuidados personales del niño LIAM SEBASTIAN CORREA ESCOBAR, a la señora JULIANA ESCOBAR RESTREPO, quien tiene la calidad de progenitora de éste, así como la vinculación tanto del menor a un proceso de intervención de apoyo psicosocial vulneración y por último, la diligencia de amonestación a los progenitores del infante; vulneran o no derechos fundamentales al menor objeto de litigio, para lo cual, es importante señalar que; la decisión tomada de conformidad a lo reglado en el Art. 86 de la Ley 1098 de 2006, los Comisarios de Familia están facultados para adoptar medida de restablecimientos a favor de NNA, cuando se detecten algún factor de amenaza o vulneración de sus derechos, dicha asignación fue decretada en su momento en el auto de apertura del 4 de julio de 2025, la cual es, totalmente valida y obedeció inicialmente a una medida de protección, encaminada a evitar algún factor de





| | RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS | Có... ...90 V...Rosa-511508-2025 Fecha de Actualización: 12/11/2019 |
|---|---|---|

riesgo, obrando así conforme al Art. 7 *ibídem* protección integral, en armonía con los Arts. 8 de la Ley 1098 de 2006, interés superior de los NNA, y el Art. 9 de la norma en mención prevalencia de derechos.

Acto seguido por parte del equipo psicosocial adscrito a esta agencia administrativa se realizó un seguimiento al presente proceso administrativo y se indagó con distintos actores que hacen parte del proceso de restablecimiento de derechos y se obtuvo las siguientes conclusiones:

Así las cosas, respecto a las condiciones familiares actuales, se encuentra que, se encuentra que el menor LIAM no ha modificado su ubicación en medio familiar, y aun reside junto a su madre y abuela materna; conformando así una familia de tipología extensa, estos residen en el barrio Ditaires del municipio de Itagüí.

El progenitor, el señor SEBASTIÁN CORREA MORALES, describe la relación con su hijo como: *"Es cercana, amorosa, jugamos mucho futbol porque a él le gusta mucho, lo tengo en clases de equitación, tenis, boxeo y futbol, también armamos legos, también vamos a piscina, ahora en Halloween estaba conmigo y lo disfrace de sultán, trato que el tiempo que este conmigo, este ocupado, quería ir a conocer el estadio, también lo lleve, yo siento que él es muy feliz conmigo, cuando lo dejo en la casa de la mamá de nuevo, me pregunta que cuando nos volvemos a ver, que le diga los días para el saber."* lo anterior evidencia un vínculo afectivo positivo y activo, también describe durante la declaración, presencia de figuras familiares que brindan contención y acompañamiento (madre, hermanos). Refiere actividades recreativas y acompañamiento constante, promoviendo la socialización y el desarrollo de intereses en el menor. Su discurso refleja disposición hacia el contacto emocional y la participación en la vida del niño, aunque también denota un estilo de crianza estructurado, el cual tiende hacia la sobre estimulación por la cantidad de actividades extracurriculares (fútbol, equitación, tenis, boxeo), en las que es partícipe LIAM en un solo fin de semana, debido a la relación conflictiva de los progenitores en la cual no logran poner de acuerdo y participar ambos en estas actividades y organizarlas de manera equitativa tanto para ellos, como para el menor.

No obstante, se observa una narrativa trazada con un sentimiento de frustración y control, evidenciado en afirmaciones como que: *"han pasado tres ocasiones que ella no me ha dejado ver con LIAM, la primera y segunda vez nó me contesto, ni me dio razón, una era entre semana un martes y yo le dije que me lo dejara ver el jueves, pero al final de cuentas no pude negociar nada y la otra un fin de semana completo, la tercera si me escribió, me avisa que estaba en la finca en Barbosa y no alcanzaba a llegar, me parece bien."* y así mismo una constante necesidad de dejar constancia de su cumplimiento económico y moral *"yo cumplo con la cuota, con las clases, con la ropa"*. Sugiriendo esto un patrón de validación y control de la situación parental, posiblemente vinculado a un conflicto no resuelto con la señora JULIANA, lo que permea el ejercicio de su paternidad.

Por su parte, la progenitora JULIANA ESCOBAR RESTREPO refiere que: *"no ha cambiado, ahora lo estoy haciendo el acompañamiento educativo virtual, entonces soy su educadora, además de su cuidadora; continuó siendo amoroso, calmado, no nos hemos separado desde que nació, sigue siendo una relación afectiva muy cercana."* Lo que da una percepción de continuidad y estabilidad en el vínculo materno-filial, donde la figura materna asume un rol de contención, acompañamiento académico y presencia constante. Se evidencia un estilo parental protector y cercano, centrado en el cuidado integral y la cotidianidad. Sin embargo, al describir una dinámica casi exclusiva *"no*



| | RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS | Código: VdRevo-511508-2025 |
|---|---|---|
| | | Fecha de Actualización: 12/11/2019 |

*nos hemos separado desde que nació"*, se sugiere un grado de dependencia emocional con el menor, que podría dificultar el desarrollo de su autonomía y el equilibrio en la relación coparental.

La comparación entre lo que refiere cada progenitor pone de manifiesto un vínculo coparental fragmentado y rígido, donde la comunicación entre los adultos se da únicamente por canales formales (email y WhatsApp), y cada uno percibe al otro desde la distancia y la desconfianza. Ambos se enfocan en su propio desempeño parental, pero no en la construcción conjunta del bienestar de LIAM, lo cual implica un factor de riesgo para el menor, al quedar expuesto a la tensión o ruptura del vínculo entre sus padres.

En cuanto al desarrollo emocional de LIAM, lo que refiere el progenitor es que: *"tranquilo, educado, alegre, paciente, muy cariñoso"*, lo cual sugiere que el niño mantiene recursos personales adecuados y una capacidad de disfrute en sus interacciones. No obstante, la falta de coordinación entre los progenitores y la exposición indirecta a la conflictividad adulta pueden generar confusión, ansiedad de separación o sentimientos de lealtad dividida.

En cuanto al desarrollo emocional de LIAM, lo que refiere la progenitora es que: *"Dentro de lo que cabe como yo lo he tratado de mantener una tranquilidad, pero constantemente me dice que cuando vamos a volver a nuestra casita, que cuando va volver a su escuela, constantemente me dice que cuando vamos a volver a New York, como eso es lo que él conoce como nuestro entorno, la casa de mi mamá no es nuestro hogar; a veces lo veo ansioso, él no sabe lo que está pasando, me cuestiona del por qué estamos aquí, él va mucho al baño por ansiedad, yo lo he llevado al médico y me dijeron que era ansiedad, porque fue sacado de la escuela abruptamente y solo fue "nos tenemos que ir", al otro día que nos vinimos tenía un concierto con los compañeros, él se había preparado, no lo pudo hacer, simplemente fue, "tenemos que empacar e irnos", entonces yo digo que eso ha generado una inestabilidad en LIAM que el papá nos ha ocasionado".* Por lo anterior se evidencia una percepción materna centrada en el impacto emocional referente a la reubicación y los cambios contextuales que han tenido en LIAM, en los últimos meses. La madre interpreta que el menor manifiesta nostalgia, confusión y ansiedad, expresadas a través de preguntas reiteradas sobre la rutina y el entorno previo, así como por síntomas somáticos *"va mucho al baño por ansiedad"*, pero de lo cual no aparta un diagnóstico o historial clínico que sustente dicha ansiedad.

A partir de las declaraciones de ambos progenitores, se observa una marcada disonancia en la percepción de la dinámica familiar y de la figura del otro, situación que revela un vínculo coparental disfuncional y conflictivo, con dificultades significativas para la comunicación y la cooperación en torno a la crianza y decisiones respecto al menor.

Sin embargo, es importante subrayar que esta descripción proviene exclusivamente del discurso materno, por lo que refleja también su vivencia subjetiva del conflicto y su interpretación del malestar infantil. La madre atribuye la inestabilidad emocional del niño directamente al padre *"eso ha generado una inestabilidad en LIAM que el papá nos ha ocasionado"*, lo cual sugiere la presencia de una narrativa de responsabilización externa, propia de dinámicas de conflicto coparental no resueltas. Esto puede incidir en la manera en que el menor percibe a sus figuras parentales y en la construcción de su propio sentido de seguridad afectiva.

En conjunto, el análisis permite concluir que ambos progenitores manifiestan afecto y compromiso hacia el menor, pero la ausencia de comunicación funcional y los desacuerdos en

 

| | RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS | Có̷̲̅͟d̴̷̲̅͟:̴̷̲̅͟90 |
|---|---|---|
| | | V̶̲̅R̶̶̷90-511508-2025 |
| | | Fecha de Actualización: 12/11/2019 |

la toma de decisiones educativas, actividades extracurriculares y cotidianas representan un riesgo psicoemocional en LIAM. Por lo que es necesario orientar a ambos hacia un modelo de coparentalidad colaborativa, fluida y respetuosa, donde se priorice el bienestar de LIAM por encima del conflicto y se fortalezcan las competencias parentales desde la corresponsabilidad, la regulación emocional y la comunicación asertiva.

En referencia a las condiciones habitacionales se evidencia que ninguno de los padres ha modificado las mismas, en otras palabras, la señora JULIANA aun reside en la Cra 53 Nro. 73 Sur – 40. Apto 1816. Urbanización Entre Bosques, barrio Ditaires y así mismo el señor SEBASTIAN en la Carrera 52d Nro. 75 AA sur – 188 Casa 160, barrio Suramérica del municipio de Itagüí.

Complementario a las medidas establecidas, se encuentra la realización del curso pedagógico dictado por la Defensoría del Pueblo, el cual a la fecha ambos progenitores acreditaron la realización de este.

Frente a la vinculación a la atención psicosocial por medio de la Fundación Sanar en la evaluación integradora de plan de caso, el equipo referencia: *"En cuanto al entorno familiar, principalmente sus progenitores, carecen de herramientas para la consolidación de acuerdos que favorezcan el desarrollo del usuario, lo cual ha ocasionado dificultades en la vivencia de los diferentes entornos en los que interactúa, además de ello, la constante exposición al conflicto entre sus padres representa un factor de riesgo emocional, pues lo sitúa en un ambiente de tensión que puede generar ansiedad, inseguridad y confusión frente a sus vínculos, también se evidencia dificultad para gestionar las emociones derivadas de estas situaciones, lo que podría afectar su expresión afectiva y su sentido de estabilidad, actualmente, Liam no se encuentra vinculado a actividades extracurriculares, lo que, teniendo en cuenta su etapa de desarrollo, puede afectar la estimulación de sus habilidades sociales, motrices y cognitivas, además de limitar oportunidades para fortalecer su creatividad, disciplina y desarrollo integral fuera del entorno escolar. De acuerdo a lo anterior se encuentran amenazados y/o vulnerados los siguientes derechos: Derecho a la vida, calidad de vida, ambiente sano, a la integridad personal, a la protección, a la familia y a no ser separado de ella, derecho a la custodia, cuidado personal y a la educación. Como recurso familiar, cuenta con su progenitora como referente estable, lo que representa un punto de apoyo fundamental para el fortalecimiento de sus vínculos afectivos y de protección, también se evidencia en el niño un desarrollo cognitivo, emocional y social acorde a su edad, con adecuado funcionamiento familiar en el entorno materno y una red de apoyo significativa, asimismo desde las habilidades, se reconoce en Liam que es un niño con gran capacidad para aprender con facilidad y rapidez, competencias que favorecen su proceso de adquisición de nuevos conocimientos, fortalecen su curiosidad y disposición frente al aprendizaje, y contribuyen al desarrollo de su autonomía y confianza en los diferentes entornos en los que se desenvuelve."* Desde la perspectiva psicosocial de la Comisaría, el reporte de la Fundación Sanar evidencia que la dificultad de los progenitores para llegar a acuerdos continúa generando un ambiente de conflicto que impacta emocionalmente al menor. Se observa que esta exposición reiterada puede afectar su seguridad y estabilidad afectiva. Asimismo, la ausencia de actividades extracurriculares limita oportunidades de desarrollo integral. No obstante, se identifica como factor protector la estabilidad del entorno materno y las capacidades cognitivas y emocionales acordes a la edad del niño.

En articulación con la Fundación SANAR, se llevó a cabo un estudio de caso, el 11 de noviembre de 2025 con el fin de revisar el seguimiento adelantado en el proceso del menor LIAM. Durante este espacio, las gestoras de caso informaron que, desde el inicio de la intervención psicosocial; específicamente el 2 de octubre del presente año; la progenitora mostró una actitud de



| | RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS | Código: ~~...~~-90 |
|---|---|---|
| | | Ver.Reso-S11508-2025 |
| | | **Fecha de Actualización:** 12/11/2019 |

apertura, colaboración y disposición frente al proceso, sin evidenciarse inicialmente dificultades en la participación o en las orientaciones brindadas.

Frente a ello, el equipo psicosocial de la Fundación SANAR aclaró que su labor se basa estrictamente en los criterios técnicos establecidos y en los derechos vulnerados o amenazados que fueron reportados por la Comisaría de Familia, por lo que no les corresponde emitir juicios fuera de dichos parámetros. Asimismo, la abogada solicitó copias de los informes elaborados por la Fundación; ante esto, las gestoras precisaron que cualquier documentación relacionada con el proceso debía solicitarse directamente ante la Comisaría de Familia por ser la entidad competente.

Finalmente, se informó que, para el momento del estudio de caso, el progenitor aún no había sido vinculado al proceso. No obstante, posteriormente la Fundación SANAR notificó el 24 de noviembre de 2025 por medio de un reporte de novedad, que el padre fue citado para iniciar atención; sin embargo, este solicitó reprogramación de la cita debido a que no tenía disponibilidad en la fecha inicialmente asignada, manifestando aun así su disposición para asistir a una nueva programación.

Respecto a lo concerniente en cuanto al régimen de visitas y cuota alimentaria a favor del menor LIAM SEBASTIAN, es necesario precisar que mediante el Auto N° 277 del 04 de julio de 2025, se aperturó el proceso administrativo de restablecimiento de derechos a favor del menor en mención dentro del mismo se estableció de manera provisional una cuota alimentaria y un régimen de visitas, hasta tanto se realizará la correspondiente audiencia de conciliación.

En desarrollo de lo anterior, los señores JULIANA ESCOBAR y SEBASTIAN CORREA, fueron citados a audiencia de conciliación en el Despacho de la Comisaría de Familia N° 3 del municipio de Itagüí, el día 22 de julio del año en curso, con el propósito de definir la cuota alimentaria, los gastos de salud y educación, así como la reglamentación de visitas en beneficio del menor. Las partes fueron debidamente notificadas, circunstancia que se encuentra acreditada en el expediente; sin embargo, dicha diligencia resultó fallida debido a que, los progenitores del menor anteriormente citado, no lograron llegar a un acuerdo respecto de los derechos y obligaciones que tienen ambos sobre su menor hijo; para lo cual el suscrito elaboró el acta de conciliación fracasada. Por lo tanto, se procedió de conformidad con lo deprecado en el parágrafo 1 del Art. 100 de la Ley 1098 de 2006, modificado por el Art. 4 de la Ley 1878 de 2018, esto es, fijar derechos y obligaciones provisionales mediante resolución motivada a favor del menor de edad LIAM CORREA.

Subsiguientemente, el pasado 19 de septiembre del año en curso, se allegó al Despacho por parte de la Dra. VIVIANA ARANGO, apoderada del señor SEBASTIAN CORREA, el Acta de audiencia N° 126 del 16 de septiembre del año que calenda, realizada en el proceso de divorcio entre los señores SEBASTIAN CORREA y JULIANA ESCOBAR, ante el Juzgado Primero de Familia de Oralidad del municipio de Itagüí, en el cual se conciliaron aspectos relacionados con los derechos y obligaciones del menor LIAM SEBASTIAN, dicho documento fue incorporado por esta agencia de familia por medio del Auto N° 403 del 22 de septiembre de 2025

Siendo así, este Despacho, procederá a dejar sin efectos las medidas provisionales adoptas en el presente proceso, vale decir, cuota de alimentos y régimen de visitas; ratificando lo decidido en

Página 23 de 36



| | RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS |  Có... |
|---|---|---|
| | | Ve...Reso-511508-2025 |
| | | Fecha de Actualización: 12/11/2019 |

la aludida acta de audiencia emitida por la autoridad judicial y por tal motivo, no se hará necesario regular dichos ítems nuevamente.

Ahora bien, corresponderá a este fallador administrativo analizar todo el acervo probatorio decretado en el plenario, teniendo en cuenta las reglas de la sana crítica y analizando la pertinencia y conducencia de las mismas; en lo concerniente al material probatorio arrimado al expediente por parte de ambos representantes legales, se logró acreditar de manera clara y sin lugar a vacilaciones que, en una primera instancia el menor LIAM residía en compañía de su progenitora la señora JULIANA ESCOBAR en EEUU, en el cual se detecto que la representante legal, era una persona garante de derechos, que realizaba un cuidado eficaz conforme a las necesidades de su prohijado, así como, el menor residía en un entorno protector, alejado de factores de riesgos; así mismo, se logró visualizar, que éste, se desenvolvía con total naturalidad e interactuaba de manera tranquila con sus pares y demás familiares.

En cuanto al reporte realizado por el señor SEBASTIAN CORREA en su solicitud de verificación de derechos, en donde éste, mencionaba que no tenía ningún tipo de contacto y/o interacción con el menor LIAM cuando éste, residía en Estados Unidos, una vez revisado y analizado el material probatorio allegado por parte de la progenitora del NNA, se logró desacreditar dicho reporte; ya que, se evidencio de manera contundente que el señor SEBASTIAN si mantenía un vínculo cercano y fluido con su hijo, consistentes en llamadas y visitas constantemente que se realizaban entre (padre-hijo) en territorio norteamericano; posteriormente se identificó que se suscitó un inconveniente entre ambos progenitores con relación a unos desplazamientos que realizó el señor SEBASTIAN CORREA en compañía de su prohijado, lo cual generó una serie de dificultades entre los representantes legales; ya que, dichos desplazamientos se hicieron efectivos sin el consentimiento de la señora JULIANA; lo cual generó una ruptura en los canales de comunicación y relacionamiento parental, lo que tuvo como consecuencia un distanciamiento entre padre e hijo.

De igual manera, y con el acervo probatorio arrimado, el señor CORREA MORALES logró acreditar que inició un trámite ante la autoridad judicial norteamericana, consistente en el retorno de su descendiente al territorio Colombiano, es así que, y una vez agotadas las etapas de dicho proceso, por medio de Sentencia del Tribunal del Distrito de EEUU-Distrito Este de Nueva York, se ordenó que el menor regresara a Colombia, dicha situación se materializó el pasado mes de abril de 2025, y a partir de dicho retorno, se han presentado una serie de conflictos entre ambos padres lo cual se ha hecho extensivo al menor.

Así mismo, y una vez radicado el menor en Colombia, se logró evidenciar un encrudecimiento en el relacionamiento parental, lo cual traía consigo un distanciamiento familiar, presentándose limitaciones en el contacto y comunicación entre padre e hijo; así mismo, se visualizó la carencia de canales de comunicación y acuerdos por parte de los ascendientes del NNA, generando como resultado la afectación de manera indirecta en el desarrollo psicológico y emocional; ya que el niño se había convertido en un objeto de poder y disputa entre los padres.



| | RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS | Códi... ...90 |
| --- | --- | --- |
| | | Ver...Reso-ST1508-2025 |
| | | Fecha de Actualización: 12/11/2019 |

Es importante clarificar que, si bien se abordó el material probatorio, con el objetivo de generar un antecedente y contextualizar las razones que dieron origen al retorno del menor LIAM SEBASTIAN a Colombia y con base a ello, el inicio del presente proceso; dicho material probatorio no será tenido en cuenta para realizar el presente fallo; toda vez que, lo que se pretende verificar son las condiciones actuales del menor y los vínculos familiares que éste, ha establecido, y no entrar a analizar la decisión tomada por la autoridad internacional y mucho menos, decidir sobre el retorno del menor a EE.UU o su permanencia en Colombia; ya que, dichos asuntos no son competencia de esta autoridad de familia. A lo antes expuesto, este Despacho Comisarial no realizará ningún tipo de pronunciamiento, respecto del trámite impartido ante dicha autoridad; clarificando eso sí, que corresponderá realizar un estudio detallado de las condiciones que actualmente presenta el menor objeto del proceso.

En el estadio procesal en que se encuentra la diligencia, la presenta autoridad administrativa procederá a concederles el uso de la palabra a las apoderadas judiciales vinculados en el presente tramite, para que éstas, presenten sus alegatos de conclusión; se le concede el uso de la palabra a la Dra. SANDRA ALZATE quien solicito se suspenda la diligencia (5 a 10min) para hablar con su poderdante; en tal sentido, el Despacho accedió lo peticionado y suspendió la diligencia por un término de 10min.

Retomando con el desarrollo de la diligencia nuevamente se le concede el uso de la palabra a la Dra. SANDRA ALZATE quien afirma: *"Doctor. Bueno, yo quería retomar la forma como inicia el proceso y el por qué se llega a este proceso realmente. Porque no podemos olvidar, señor comisario y todos los presentes, que todo viene por un traslado forzoso, tanto del niño como de la señora Juliana, por una denuncia, con mucho respeto, salida de toda verdad. ¿Por qué? Porque la denuncia es por un secuestro. Cuando hay pruebas suficientes dentro del expediente que demuestran claramente que, como usted lo manifestó anteriormente, el señor sí tenía un régimen de visitas tranquilo, libre, porque ni siquiera estaba regulado, podía ver a su hijo tranquilamente. Pero, lastimosamente, la persona que transgredió la confianza fue el mismo señor Sebastián. Cuando, con mentiras, saca al niño, así sea su hijo, lo que sea, de un estado hacia otro, de Nueva York a la Florida. Yo creo que, si ese episodio no se hubiera dado, las cosas hoy no estarían donde están. Pero, lastimosamente, eso generó en la señora Juliana que hoy exactamente se retoma eso para atacar el tema de que se levante la medida de protección de que el niño sea sacado del municipio de Itagüí. Porque si eso lo hizo en Estados Unidos, en Colombia lo puede hacer tranquilamente a través de una frontera terrestre o de cualquier forma, porque también sabemos el poder adquisitivo, la situación económica aboyante del señor, que le permite a él abrir cualquier camino. Entonces, nos preocupa realmente que la decisión del levantamiento de la medida se tome el día de hoy. Adicional a eso, no quiero dejar de que se tenga en cuenta que el incidente no puede desligarse de la violencia, porque si no, doctor, usted no sería competente dentro de este proceso, porque de la única manera que la comisaría puede conocer de un restablecimiento de derechos es cuando es en el marco de la violencia, o sea que no nos podemos desligar de la ley 294. Y usted mismo lo manifiesta, hoy se levanta la medida de la salida del municipio de Itagüí, pero el día que lo hizo y cuando se denunció oportunamente a la comisaría, sí había transgredido una orden específica y clara dada por usted, que con mucho respeto no se levantó tampoco en la audiencia del divorcio. Entonces, cuando aquí no podemos decir que porque no se trató dentro de la audiencia de divorcio, que eran temas diferentes, aquí estamos en un proceso de restablecimiento de derechos en favor de un niño. Por lo tanto, no podemos dejar de darle la importancia a la orden impartida por usted, de forma clara, no en un acto administrativo, sino en dos actos administrativos, y el señor sí los transgredió. Otra cosa que quiero también, que no se deje pasar de largo, es pedirle al señor que sea un poco más cuidadoso en el cuidado del niño, en el tiempo que está con él, porque a*



| | RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS |  |
|---|---|---|
| | | Fecha de Actualización: 12/11/2019 |

cualquiera se le puede caer, es cierto, pero ya tres dientes quebrados, dos ampollas, el morado o el hematoma en el labio, etc, etc, pues ya son acciones repetitivas que ameritan un llamado de atención al cuidado del niño, porque como a la mamá se le puede caer, es que a nadie eso no, pero sí hay una negligencia en el cuidado, porque se evidencia que no es una sola vez, son varias veces, y aquí si estamos hablando del interés superior del niño, tenemos que proteger al niño. Entonces, eso queremos dejarlo muy claro a usted, señor comisario, frente a su decisión, porque no estamos de acuerdo con el levantamiento, como le digo, de la medida de la salida del Itagüí, porque nos preocupa, lo que más le preocupa a la señora Juliana es que el señor saque al niño fuera del país, y es muy fácil, en Colombia es muy fácil por cualquier medio. Entonces, esa partecita es la que yo repongo el día de hoy, pero también quiero dejar muy claro que me preocupa mucho que se haya colocado también la solicitud de verificación del cumplimiento de derechos esté basado en tantas mentiras, señor comisario, porque manifestar que el niño estuvo inestable cuando se ha debidamente probado entre el expediente que el niño, ni en Estados Unidos ni acá, ha estado inestable al lado de su madre. Se ha probado una super protección de sus derechos y se los ha garantizado con aporte o sin aporte del señor, porque solamente, como usted, y en varias ocasiones se lo recriminé, teniendo una prueba de la real capacidad económica, pues fijar una cuota alimentaria irrisoria de un millón quinientos para nosotros fue muy doloroso, más por la situación de desempleo que hoy la señora Juliana tiene, a raíz de las consecuencias que se ha dado por la violencia que el señor ha ejercido contra ella, y traer el niño con un proceso cargado de completas mentiras, porque un secuestro está debidamente probado que si yo puedo ver al niño, no se cumple ningún lineamiento de tal delito. Adicional a eso, pues eso también fue desvirtuado dentro de la haya, por tanto, no se le quitó tampoco la custodia a la señora, que podía ser una de las consecuencias por lo que pretendía el señor demostrar en la haya. Y también quiero, doctor, que tenga en cuenta las pruebas que usted dijo que iba a tener en cuenta, valga la redundancia, frente a los mensajes donde se prueba que el niño jamás retornó a Estados Unidos de turismo, como fue el permiso que le dio limitativo de una fecha a otra, cuando hay pruebas suficientes que determinan que el niño venía en mayo de paseo, como quedó debidamente probado en los chats que entre ambos padres se enviaron. Entonces son situaciones que generan en la señora Juliana una total desconfianza en el señor, y que prueban además que se cumplieron las amenazas que él tanto repitió en esos chats que también fueron aportados oportunamente, tanto al proceso de violencia intrafamiliar que usted conoce en este momento, como en el proceso de restablecimiento de derechos que deja claramente que mi poder dante jamás ha pretendido romper el vínculo paterno-filial del señor Sebastián con su hijo, tanto así que aunque tuviera las restricciones de visitas en Estados Unidos, se le permitió ver al niño con una orden y nunca se le rompió esa comunicación. Entonces también quiero doctor que se modifique algo, las video llamadas que el señor hace, pues a mí me parece que quedaron demasiado tarde a las 7:30 p.m., y en muchas ocasiones no es que la madre pretenda no pasarle al niño o que no hable con el padre, sino que en ocasiones el niño está dormido o cualquier otra situación, y él nos llama a las 7:30 en punto porque afortunadamente le aportó la prueba y se evidencia que las horas de llamada no son a las 7:30 en punto sino a las 7:40, a las 7:53, a las 8 y... porque yo también tuve la delicadeza de verificarlo. Entonces si aquí estamos hablando en el bienestar del niño y si el niño está dormido no le podemos interrumpir, pues un sueño que es un sueño reparador porque el padre quiera hablar con su hijo, no estamos en desacuerdo en que lo haga, no nos vamos a oponer a que siga teniendo esa comunicación, pero sí me gustaría que se retomara el tema de la hora porque creo que es demasiado tarde y también hay pruebas de que se le ha devuelto la llamada y que el señor no contesta, ¿cierto? Y cuando está afuera del país pues también tenemos que mirar que la culpa no es del niño ni tampoco es de la señora Juliana, que eso es otra cosa que también tenemos que revisar porque la salida del país del señor son constantes. Entonces, ¿qué quiero hoy, señor comisario? Dejar claro que la señora Juliana jamás le ha vulnerado los derechos ni constitucionales ni legales a su hijo, jamás. Nunca ha pretendido romper el vínculo paterno-filial, jamás, pero sí quiere que se pueda restituir la confianza que se rompió por culpa del mismo señor Sebastián porque ella hoy está muy afectada con el proceder del señor porque hoy está en Colombia sin trabajo, cargada de deudas y sin una fijación de cuota alimentaria por parte de usted, aunque ese tema no tiene nada que ver con este proceso. Pero esas situaciones también tienen que ser valoradas porque eso le afecta a ella y eso es una total violencia que no



| | RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS | Có... ...90 VuRess-511508-2025 |
|---|---|---|
| | | Fecha de Actualización: 12/11/2019 |

se puede ligar de este proceso porque la intención es que se contextualice este proceso. Y también quiero entrar a dejar mi preocupación con el equipo psicosocial de Sanar porque uno en un documento no puede plasmar cosas que una persona no haya dicho y por eso el día de ayer la señora Juliana no llevó al niño porque quería hablar con el grupo que la ha atendido a ella por todas las mentiras que se dijeron en ese informe y que tristemente ayer le dijeron a la señora Juliana que no, que eso no importaba, que eso no incidía en nada, pero claro, ¿cómo no van a incidir? Porque ahí dice que la señora cuenta con ahorros, ¿dónde están los ahorros? Que la señora, pues un sinnúmero de cosas que yo creo que ya se las enumeré a usted, señor comisario, y que creo que era la forma como usted me lo está exigiendo, no llamar a Sanar ni decir en Sanar absolutamente nada, pues ya ya se lo escribí a usted, todas las cosas que se plasmaron que no obedecen a la realidad y que la señora Juliana jamás dijo. Entonces me preocupa mucho. Adicional, cosas que el niño Liam jamás dijo tampoco porque no han tenido contacto con él, el niño, a la persona que han entrevistado es a la señora Juliana y el niño va y juega y hablaron de dibujos y de situaciones que el niño tampoco ha realizado, actividades que no ha realizado aún en la institución. Entonces yo creo que uno no puede cortar y pegar o no sé, uno tener al menos como la delicadeza de verificar si las cosas que se están plasmando en un informe que va a ir a una autoridad administrativa estén encargada de verdad o de cosas que realmente no obedecen a la realidad. Eso es algo que también quiero... Otra cosa que también quiero decir, pues que, para mí, ella tampoco, esto ya le genera confianza con el equipo psicosocial porque mira a dónde han llegado y la relación de las cosas de inconformidad de la señora no es una y creo que se dejó muy específica dentro del memorial que se radicó oportunamente dentro del término otorgado por usted. Entonces yo también creería que es importante que si no se cambie de institución para hacer los seguimientos, señor comisario. También quiero entrar a hablar de... O sea, si tienen el incidente, ¿por qué estamos dentro del marco de la violencia? Porque si no, usted no sería competente, señor comisario. Entonces este proceso no se puede llevar desligado de una violencia para absolutamente nada. Este proceso está obviamente regulado en la 1098, pero por ser dentro del marco de la violencia no se puede desligar de la 294. Y también quería que tengan en claro lo que manifestó el niño en la entrevista, donde deja una verdad, porque esa entrevista fue transparente, aún no se habían generado tantas situaciones incómodas en el desarrollo del proceso, no solamente con usted, sino también con el equipo. Entonces aquí el niño muy claramente manifiesta que él está en su casa, pero siempre me visita el papá en Estados Unidos, en Nueva York, porque lo dice expresamente. Dice expresamente que la mamá no le habla del papá. Dice expresamente que el papá no le habla de la mamá. O sea que aquí también tenemos que verificar que los presuntos derechos vulnerados no son ciertos, porque jamás tampoco se sustentaron por ustedes en ningún acto administrativo de la forma adecuada. Eso también me preocupa mucho, porque cuando ustedes hablan que se le está violentando el derecho a la educación, pero le hemos presentado oportunamente certificaciones de que el niño estaba estudiando, pero si es traído de forma abrupta a Colombia, tampoco se quedó sin estudio, porque el niño se presentó también la certificación de que el niño siguió estudiando de forma virtual con la institución de Estados Unidos. Entonces yo creo que para próximos procesos les recomiendo que, para tomar unas decisiones, o para al menos entrar a descalificar o a decir que hay una vulneración, deben estudiar un poquito más las pruebas, porque esas creo que son las inconformidades mayores que yo tengo con la comisaría, porque no hay una debida valoración de las pruebas. Hoy no se tuvo en cuenta para absolutamente nada, para absolutamente la situación que hoy vive la señora Juliana, que es supremamente delicada y que es consecuencia del actuar del señor Sebastián, que eso obviamente afecta a cualquiera, pero que ha hecho ella no dañar a su hijo, no molestar a su hijo, sino garantizarle un ambiente sano, que tampoco fue debidamente probado, porque una cosa es el problema que haya entre padres, que es obvio que existe, y hoy existe mucho más a raíz de una presunta falsa demanda ante la Haya, porque para mí un secuestro no se configura de la forma como él pretendió decirlo, porque si él podía ver a su hijo, sabía dónde estudiaba, etc., etc., ¿dónde está la tipificación de un delito de secuestro? Entonces son situaciones que a mí me parecen supremamente preocupantes y que obviamente rompen cualquier comunicación y que obviamente han hecho que se limite la comunicación entre los padres, pero más para mí por el actuar del padre, porque la madre siempre estuvo dispuesta, desde que se fueron para Estados Unidos, ella y su hijo, que su padre tuviera una



| |  |
|---|---|
| RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS | Có... |
| | Ve...R...-511508-2025 |
| | Fecha de Actualización: 12/11/2019 |

comunicación asertiva con ella, y adicionalmente con su hijo, pero se revolvió el tema de divorcios, que también son de total conocimiento de usted, señor comisario, lo cual conllevó a, lastimosamente, una ruptura en una comunicación que debería ser asertiva, y por las amenazas constantes del señor, que lastimosamente se cumplieron, y por eso están hoy aquí, porque también el niño manifestó, y si estamos hablando que, como cuando usted lo manifestó, que el niño, que el señor manifiesta que el niño está triste, pero el niño manifiesta de forma expresa, me gustaría vivir en Estados Unidos, porque allá tengo amigos y me gusta estudiar allá. Entonces el artículo 26 es muy claro, en los procesos hay que escucharlos, entonces si el niño no quiere estar en Colombia, sino en Estados Unidos, y allá por la capacidad económica del padre puede compartir libremente, ¿por qué no permitirle que el padre, obviamente no usted, porque no es su competencia, pero el padre, permitir que su hijo se vaya? Yo sé que él lo quiera posiblemente a su forma, pero creo que eso no le está garantizando ningún derecho al hijo, y sí se está vulnerando los derechos y el querer de un hijo, por tenerlo retenido acá. Entonces me preocupa mucho esa situación también, ¿por qué? Porque como, y lo voy a decir de forma muy incómoda, la señora es profesional, es médica, asociada médica, y aunque no tenga una discapacidad, ella no tiene por qué hoy en ejercer en Colombia, una actividad diferente a lo que ella estudió, y homologar en Colombia, una medicina, no creo que se demore un día, un mes, sino mucho tiempo, lo cual va a generarle a ella la constante violencia que hoy todavía vive. Entonces esa situación me parece muy preocupante, ¿por qué? Porque ella esos problemas la están agobiando, y la afectan, y obviamente genera la desconfianza que sigue existiendo con el señor Sebastián, por las amenazas, por la violencia, y porque la persona que se ha tomado como un trofeo ha sido el mismo señor Sebastián, porque lo puedo probar con el video que aportó al proceso donde le iban a celebrar una fiesta el día del regreso de Estados Unidos, cuando sabía que el regreso no era un regreso normal. Entonces son todos esos hechos que incitan a una total violencia, y que generan en la señora la violencia constante de la cual ha sido víctima por parte del señor Sebastián. Entonces esas son razones por las cuales la señora no tiene confianza en el señor. Hoy posiblemente se trabaje el tema con las instituciones o con los entes que correspondan y con los profesionales adecuados, para que se haga un posible acercamiento, a tratar de solucionar esa parte. Pero yo digo que no es culpa de la señora Juliana, realmente ha sido culpa del mismo señor Sebastián. O sea, él presenta la demanda, pero el que viola los derechos del niño es él, directamente, no la señora Juliana. Entonces a mí me preocupa mucho. Entonces yo pongo la demanda porque el primero la pone, entonces es el que se le demuestra. No, creo que hay pruebas suficientes dentro del expediente que se han determinado que la violencia, no solamente contra la señora Juliana, sino también contra el niño, la genera el mismo señor Sebastián. Pero no es simplemente por la no comunicación entre los padres, sino por los hechos que han conllevado a ella. Porque no son de hoy, son anteriores. Y acá tampoco podemos olvidar, doctor, que hay clases de familia hoy, para hablar de temas de una vulneración del derecho a tener una familia. Las familias monoparentales dominadas por la parte de las madres también son reconocidas en Colombia por muchas sentencias de la corte. Que creo también que deben ser tenidas en cuenta. Y se llegó a esa familia monoparental por parte de la violencia generada por el señor, no por voluntad propia de la señora. Ella no se va para Estados Unidos porque sí, ella se va para Estados Unidos porque el señor Sebastián ya tenía otra pareja. Entonces son situaciones que obligaron a que ella retomara una vida, porque ella también tiene derecho a una vida como la que el señor desarrolla con su pareja, que antes era extramatrimonial. Hoy ya no, porque ya se divorciaron, pero sigue con la misma persona, puede viajar, es libre, puede disfrutar de su dinero. La señora está acá, en este país, sin empleo, en una condición deplorable, con muchas deudas, pero acá no hay garantías para ella, lastimosamente. No posiblemente esté el proceso, pero no podemos olvidar que hay un proceso paralelo que también está en curso por una violencia intrafamiliar. Entonces esas situaciones son a las que yo me opongo, porque para mí sí hay una falta de valoración probatoria, y yo creo que tampoco podemos descontextualizar las cosas y no solamente hablar del señor Sebastián, cuando acá claramente la señora es cumplidora y ha respetado los derechos de su hijo de la forma adecuada. Entonces sí, hoy le pido, señor comisario, el recurso es frente a no levantar la medida de protección de sacar al niño del municipio de Itagüí. Entonces con eso presenta mi oposición frente a esa decisión del día de hoy..."



| | RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS | Có... ...90 V...Reso-511508-2025 |
| --- | --- | --- |
| | | Fecha de Actualización: 12/11/2019 |

Siendo, así las cosas, se le concede el uso de la palabra a la Dra. VIVIANA ARANGO, quien en su intervención indicó: "*Muchas gracias, señor comisario. Señor comisario, como el espacio que usted aportó, los alegatos de conclusión relacionados con el proceso que se encuentra usted conociendo el día de hoy, quisiera enfocarme en varios aspectos. En primer lugar, quisiera ahondar en el inicio de la actuación administrativa. Este inició previa solicitud de verificación de derechos por parte de mi representado por hechos generadores de vulneración de derechos del niño Liam Sebastián. ¿En qué se sustentó esa solicitud? En varias situaciones ya conocidas por el despacho ampliamente, pero en su momento se mencionó la desescolarización de Liam Sebastián y el bloqueo persistente en las visitas de mi representado y el niño, las cuales ni siquiera por modalidad virtual se podían realizar de manera tranquila y permanente y ello todo por decisión unilateral de la señora Juliana Escobar Restrepo. En la información aportada por el señor Correa Morales con respecto al origen de las decisiones que persistían en la señora Juliana y en disfavor de los derechos de Liam, se informó que se suscitaron en ocasión con la decisión de un despacho judicial federal de Estados Unidos y que fueron confirmadas por varias decisiones que se encuentran en el plenario. En esa decisión extranjera se ordenó en favor del niño Liam Sebastián el retorno a Colombia con algunas órdenes judiciales adicionales que claramente no fueron de gusto de la señora Juliana y pues acabamos de escuchar que tampoco de su representante jurídica, sin embargo, digamos que el origen de las decisiones de la señora Juliana se tenían que mencionar que se originaron en ese disgusto pero no es posible y usted ya lo mencionaba en múltiples oportunidades, señor comisario que usted no puede manifestar ningún tipo de mala fe en relación a ese proceso como insistentemente se ha planteado y además esa exigencia se torna individualista y jurídicamente imposible dentro del sistema jurídico colombiano y de sus funciones dadas por la ley 1098 del 2006 desde ya quisiera exponer que es notoria la evidencia en el proceso de las resistencias objetivas de parte de la señora Juliana Escobar Restrepo para asumir una actitud positiva y propositiva al interior del proceso aunque no tiene otro objetivo como el cumplimiento de derechos de su propio hijo por el contrario se ha reconocido una actitud descortés donde se pretende traer al presente proceso el duelo por las decisiones extranjeras ya mencionadas y como lo dije pues imponiendo una resistencia subjetiva, ello porque se le ha manifestado en múltiples ocasiones que los derechos de Liam Sebastián que se pretenden recomponer son los asociados a su lugar de ubicación actual y la residencia habitual en Antioquia. En segundo lugar señor comisario y como para poner como varias bases en mi alegato también es importante referirme a la verificación de derechos y las pruebas aportadas con el motivo de ingreso del niño al proceso administrativo de restablecimiento de derechos no podemos olvidar que se identificaron claramente por parte del equipo interdisciplinario los derechos vulnerados o en amenaza entre ellos el derecho a la vida a la calidad de vida, a un ambiente sano, a la integridad personal, a la protección a tener una familia y a no ser separado de ella, a la custodia, al cuidado personal y a la educación que fue en clave de amenaza ahí se expusieron varias circunstancias: una desescolarización generada por la madre, un relacionamiento hostil entre los padres del niño extendiendo ese ámbito tenso a Liam y el vínculo con el padre y la familia paterna que se había visto pues para ese momento obstaculizada por decisión de la madre, de ese informe de verificación de derechos efectuados por el equipo interdisciplinario se pudo establecer que los hechos denunciados por mis representados no correspondían a hechos aislados ni a situaciones contrarias a la verdad sino que fueron plenamente visualizados y verificados por el equipo interdisciplinario por medio de esos informes, adicionalmente en la práctica probatoria se evidencia naturalización por parte de la progenitora de Liam Sebastián minimizando la información del niño respecto de los hechos investigados y aumentando en relación con sus pretensiones personales situación que como ya lo dije no es de su competencia señor comisario y que es el punto de origen de la molestia de la señora Escobar Restrepo y a su vez ha sido el punto de partida de las vulneraciones de Liam, un ejemplo como ya lo dijo el comisario es la dinámica escolar aunque el niño sí está escolarizado y asiste a clases de manera virtual no tiene interacciones con niños de su edad y pues un ambiente adecuado para un niño de tan corta edad considero que no debe ser la modalidad virtual, aunque la señora Escobar Restrepo por lo escuchado previamente por parte del equipo interdisciplinario ha manifestado al despacho que el niño extraña su dinámica educativa, no se ha detenido a pensar que su enseñanza actual en virtualidad no le ayuda en lo que ella ya se dio cuenta y es que el niño por su escaza edad y porque ya venía*



| | RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS |  Cód: Ver: Fecha de Actualización: 12/11/2019 |
|---|---|---|

*acostumbrado a un sistema presencial, es una situación que ejemplifica en su máxima expresión lo que estoy mencionando y que finalmente desemboca en una vulneración y una amenaza de derechos de Liam. Otra circunstancia que Considero de gravedad radican las visitas que aunque ya fueron puestas en marcha aún persisten circunstancias subjetivas donde en algunas ocasiones se le ha negado el acceso a la información del niño por ejemplo en relación a cuándo ocurren las vacaciones que están íntimamente ligadas con la reglamentación de visitas conciliadas en el juzgado de familia o cuando ha asistido a recogerlo y no tiene ni siquiera información telefónica de que alguna situación ocurrió y que por eso pues no es posible recogerlo como en algún momento puede ocurrir en cualquier reglamentación de visitas. También es importante expresar que esto que he señalado no corresponde a hechos aislados ni menores sino un patrón persistente y progresivo de vulneración donde la madre asume una postura imprudente queriendo desviar la mirada del despacho a una situación que usted no puede no puede intervenir y en su lugar en vez de asumir el principio realidad que tiene de frente opta por buscar otras consecuencias pasando por encima de los derechos de su hijo. Tanto es así que obra constancia en el plenario de la actitud de la madre en relación con el seguimiento a las medidas de protección por parte de su despacho pues están claramente informadas y el día de hoy también fueron escuchadas en la diligencia. En consecuencia, a la vulneración de los derechos de Liam Sebastián perpetrados por la señora Juliana Escobar Restrepo fueron probadas en la verificación de derechos y en la práctica probatoria y lamentablemente como lo mencioné pues aún persiste. Otra de las bases señor comisario es el interés superior del niño, ya no voy a ahondar y no voy a mencionar mucho lo relacionado con ello, pero sabemos que toda decisión en este tipo de procesos debe estar permeado por ese interés superior, debe estar desprovisto de estereotipos de género y basado específicamente en el examen del motivo de ingreso, la práctica probatoria y que son y las cuales fueron útiles y conducentes para la definición de las medidas de protección que usted pues defina el día de hoy y debo enfatizar que mi representado ha tenido toda la voluntad de materializar las órdenes enfocadas en las medidas de protección. Considero que en relación con los procesos que haya activado el señor SEBASTIÁN CORREA MORALES en administrativos o judiciales no pueden enfocarse en un intento de disputa o relacionamiento hostil. Ellos fueron iniciados en virtud de solicitar la materialización del regreso de su hijo a Colombia y consecuencialmente el restablecimiento de los derechos pues del niño. En conclusión, existen varias situaciones que se avizoran y están claras en el expediente y es que el motivo de ingreso de Liam Sebastián al proceso administrativo de restablecimiento de derechos y esa vulneración y amenaza son claramente hechos que fueron perpetrados por la señora Juliana Escobar. Lamentablemente también encontramos que ante el acompañamiento psicosocial y decisiones provisionales de la autoridad administrativa se tomaron más como una persecución y no como una oportunidad de mejora para el restablecimiento de los derechos de Liam. También considero que ante la dinámica del proceso y lo establecido en él, no existe ninguna duda de que mi representado no ha realizado ningún tipo de relacionamiento a agredir o ejercer alguna conducta constitutiva de violencia entre familiar en contra de Juliana y del niño. Lo que se ha podido establecer es que fue la última ratio posible para que las autoridades intervinieran ante la actitud de la vulneración de derechos de la progenitora. Quisiera también decir que ante la actitud mencionada por parte de la señora Juliana en relación con el proceso administrativo de restablecimiento de derechos, lo que ha generado es que esas vulneraciones han tomado tal magnitud que a la fecha persisten. Y en el asunto se tiene que esas pruebas que fueron decretadas y practicadas han sido persistentes y un informe sólo de lo esencial en diferentes oportunidades y se corresponde con la realidad fáctica y circunstancial corroborada. ¿Cuáles pruebas, señor comisario? Me refiero a las pruebas relacionadas con el restablecimiento de derechos en Colombia, ninguna es relacionada con, por ejemplo, cuando se solicitaba que los alimentos debían ser fijados con base en la necesidad del niño en otro país, en relación a la residencia virtual, que como ya lo expliqué, es imposible para usted tomar ese tipo de decisiones. Creo que no es necesario abundar más sobre la abundancia de la generosidad de la prueba, asimismo como la contundencia de la misma. Ello pues lleva a deducir que efectivamente hubo una vulneración de derechos. Sin embargo, y para terminar, le solicito al despacho al momento de tomar las decisiones tener en cuenta los siguientes. En primer lugar, y es que no existe evidencia de un cambia real de la progenitora en su forma de reaccionar ante la realidad jurídica de su hijo y la suya*



**RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS**



Co████████90

V█Reso-S11503-2025

Fecha de Actualización: 12/11/2019

propia, además de que sigue habituando sus decisiones en virtud de un proceso que ya trajo sus respectivas órdenes. En todas las situaciones que se le ha preguntado a Liam Sebastián y que tiene inconsistencia en la verificación de derechos y en las pruebas, manifiesta sentirse seguro y con una vinculación positiva hacia la figura paterna y hacia su familia extensa, siempre con la solicitud de querer compartir con él de manera física. También quisiera solicitar que se adopten unas medidas de protección contundentes y necesarias en favor de Liam Sebastián, conforme a esa prueba practicada y teniendo como norte el interés superior del niño. Y como última solicitud, se tenga como referencia obligatoria el acuerdo de voluntad de los progenitores en el proceso de divorcio, especialmente en lo relativo a la cuota alimentaria y la reglamentación de visitas para que se armonice con las medidas de protección a imponer. Señor comisario, yo creo que es totalmente ilógico y desfasado que si usted ordenó en primer lugar que las visitas fueran restringidas, que inclusive yo hice mi respectivo pronunciamiento por considerar que no solamente se estaban restringiendo a mi representado, sino que también por obvias razones al niño, pues no sé por qué se está solicitando una restricción nuevamente cuando la decisión del juzgado fue posterior a las medidas de protección de su despacho. Lo que quiere decir que todo lo que anteriormente dije, pues la señora Juliana no ha interiorizado la situación que tiene y las decisiones que ha tomado, pues porque claramente se tiene que privilegiar el acuerdo de voluntades que se realizó en ese despacho. Entonces, de una manera muy respetuosa, le solicito que no se realice ningún tipo de prohibición en relación con el movimiento de mi representado con el niño en el país. ¿Ello por qué? No es necesario, como lo dije, se debe dar prelación al acuerdo. Entonces, bajo esos intereses termino mis alegatos y considerando pues lo que le acabo de mencionar con relación a que no es posible en este momento me volver a mencionar una prohibición cuando la misma señora Juliana aceptó ante un juez de la república un acuerdo sin ninguna restricción. Muchas gracias, señor comisario..."

Y, por último, se le concede el uso de la palabra a la representante de ministerio público, quien expresó: "Muy buenas tardes para todos. Antes de iniciar mis alegatos de conclusión de que señor comisario y todos los presentes en este proceso, una vez terminado mis alegatos de conclusión, debo retirarme la diligencia ya que a las cinco de la tarde tenía una audiencia legalización de captura por presunto abuso sexual y le solicité al juez de control de garantía que me regalara un espacio para poder terminar esos alegatos. Muchas gracias. Bueno, para este Ministerio Público, tras de analizar el acervo probatorio y conforme a los principios del interés superior del menor, prevalece la protección integral del menor Liam Sebastián. Para este Ministerio Pública, dentro de este proceso es importante que el menor Liam Sebastián requiera el mantenimiento de medidas de protección que garantice plenamente su seguridad, estabilidad emocional, desarrollo integral y que evite en cualquier momento alguna situación que lo ponga en riesgo. Una vez escuchado y revisado los informes del equipo interdisciplinario, el informe presentado por la institución SANAR, para este Ministerio Público queda claro que la madre Juliana, progenitora del menor Liam Sebastián, es una madre garante, es una madre protectora, en la cual el menor se encuentra con un buen desarrollo de vida, tiene una buena calidad de vida, una buena dignidad humana, pero como lo dice la Constitución, el menor debe garantizarse de tener una familia y no ser separado de ella. Con base a la revisión y a lo que pude escuchar por el equipo interdisciplinario, ambos padres son garantes y la situación que se presenta entre ellos es un conflicto entre los padres. Acá estamos en un proceso en un PARD, donde se está tratando de resolver la calidad de vida del menor, entonces tenemos que centrarnos en ello. Señor comisario, la solicitud que este Ministerio Público le hace a su despacho es claro, uno de ellos es garantizar la protección y las garantías procesales fundamentales y humanos del menor, es mantener las medidas que el menor Liam Sebastián pueda tener un buen desarrollo en su calidad de vida, es solicitarle a los padres del menor tener una buena comunicación asertiva, manejar las mismas pausas de crianza, porque ustedes van a ser padres de Liam Sebastián toda la vida, se van a tener que encontrar en diferentes espacios, van a tener que compartir diferentes momentos, entonces qué importante que el despacho ordene a ambos padres a tener un respeto el uno por el otro y así puede brindarle a este menor, que es parte fundamental de la vida de ambos padres, un buen desarrollo y una buena comunicación para que puedan manejar el mismo idioma y puedan criar a este menor de una buena manera. Señor comisario,




| | **RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS** | Código: |
|---|---|---|
| | | Ver: |
| | | **Fecha de Actualización:** 12/11/2019 |

*entonces este Ministerio Público le solicita a usted de forma muy respetuosa: primero garantizar los derechos del menor, no tomar decisiones apresuradas, que las decisiones que su despacho vaya a tomar sean orientadas a satisfacer, a garantizar los derechos del menor y no los intereses de ningún adulto que se encuentre en este momento, a evaluar la idoneidad de la familia extensa o de apoyo que tenga Liam Sebastián, porque lo más importante es que Liam Sebastián tenga una familia segura y donde él se encuentre tanto con su madre o con su padre, se sienta seguro de sí mismo y también tener un acompañamiento por parte de su despacho, un acompañamiento psicosocial y un seguimiento dentro del proceso, donde se pueda verificar que el desarrollo y la buena calidad de vida y la dignidad humana del menor se esté garantizando y llevando a cabo. Muchísimas gracias..."*

Corolario a lo mencionado en líneas anteriores se logra concluir en este presente proceso administrativo que: I. De acuerdo con la información recopilada, se encuentra que, el menor LIAM, tiene sus necesidades básicas garantizadas y se encuentra en un entorno familiar protector y garante de sus derechos, pero aún persisten las situaciones de fondo relacionadas a la conflictividad y distanciamiento entre los progenitores, por lo que se hace necesario fortalecer algunos elementos, y en función de ello se realizan varias observaciones: II. En ese contexto, se considera viable mantener la ubicación en medio familiar y por lo tanto se sugiere confirmar la custodia y cuidado del menor LIAM CORREA ESCOBAR en cabeza de la señora JULIANA ESCOBAR; entendiendo que existe un vínculo positivo entre ambos y la madre genera un rol de cuidado y protección. III. De acuerdo con lo anterior y en aras de garantizar un entorno seguro y estable para el menor, se realizan algunas precisiones a ambos padres, a saber: o Permitir sin ningún obstáculo el contacto y la comunicación telefónica padre/madre – hijo, en condiciones adecuadas de seguridad, privacidad y tranquilidad para ambos. o Exhortar a los progenitores, para que éstos, mantengan una comunicación respetuosa y cordial, en función del bienestar de su hijo e informarse de manera asertiva, oportuna y continua las condiciones cotidianas del niño. o No reforzar en el menor discursos negativos sobre el otro progenitor(a), ni sobre el entorno familiar de éste(a) o sobre hechos del pasado. o Evitar a toda costa, inmiscuir a su hijo o ponerlo como objeto de disputa en las desavenencias que como progenitores puedan presentar en el ámbito personal. o Siempre que se requiera el cuidado del menor de edad, se deberá tener como primera opción al progenitor(a) o Priorizar por encima de sus diferencias personales, su rol como progenitores. o Vincularse de manera activa al proceso de acompañamiento familiar. IV. Se reclama a los progenitores que, se vinculen activa y responsablemente con el proceso de atención que se adelanta por medio de la Fundación Sanar, con el fin de avanzar en los objetivos terapéuticos propuestos, teniendo en cuenta que es necesario fortalecer tanto en el menor como en ambos padres algunas estrategias de comunicación, manejo de las emociones, pautas de crianza, duelo por separación y demás que se consideren necesarias, en pro de restablecer los vínculos familiares. V. Se exhorta a los progenitores a que las decisiones relacionadas con la vida del menor LIAM, en todos los ámbitos que le competen (educativos, de salud, recreativos y de actividades extracurriculares, etc.) sean tomadas de manera consensuada, procurando siempre el interés superior y el equilibrio emocional del niño. En este sentido, se hace necesario que ambos padres mantengan una comunicación efectiva, oportuna y respetuosa, de modo que puedan coordinar y acordar conjuntamente las dinámicas que impactan su desarrollo y bienestar integral. Lo anterior cobra especial relevancia dado que, según lo reportado en el proceso psicosocial, el menor actualmente participa en diversas actividades extracurriculares como fútbol, equitación, tenis y



| | RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS | Có... ...90 |
|---|---|---|
| | | Ve...Raso-S11508-2025 |
| | | Fecha de Actualización: 12/11/2019 |

boxeo; no obstante, dichas actividades se están desarrollando exclusivamente durante los tiempos de visita con el progenitor paterno, lo cual limita su continuidad y puede generar una sobrecarga de actividades en lapsos muy reducidos. Asimismo, desde la Fundación Sanar se ha recomendado, en coherencia con la etapa evolutiva de LIAM, que cuente con actividades extracurriculares estables, que favorezcan su desarrollo motriz, social y emocional, y que brinden oportunidades de interacción con pares y, además, resaltando que actualmente los temas educativos del menor corresponden a la virtualidad. En atención a ello, se reitera la importancia de que ambos progenitores acuerden de manera conjunta la pertinencia, frecuencia y continuidad de dichas actividades, garantizando que no recaigan únicamente en uno de los padres, evitando la sobresaturación del menor y promoviendo un acompañamiento equilibrado por parte de ambos. Este consenso permitirá que LIAM cuente con rutinas saludables, tiempos adecuados de descanso y un acompañamiento parental coherente y distribuido, aspectos fundamentales para un desarrollo integral armónico. **VI.** Se hace llamado de atención a ambos padres y recordarles que, ninguno de los padres deberá involucrar a su hijo en sus diferencias y mucho menos hablarle mal el uno del otro. Así mismo, la madre debe propender siempre por un vínculo fluido, respetuoso y cercano entre su hijo y el progenitor. Y en esos términos, la madre deberá mantener informado al señor SEBASTIAN sobre el estado cotidiano de su hijo. Tal situación ha sido decantada por la Corte Constitucional, en la Sentencia T-033-20, conceptúa que: *"los derechos de los niños no pueden estar supeditados a los conflictos y problemas suscitados entre sus progenitores, independientemente de quién los haya provocado y de las motivaciones que animen las posiciones personales antagónicas entre ellos (...) en el plano de lo racional, los mayores no gozan de autoridad ni de legitimidad para imponer a los menores el fardo de sus propias desavenencias."* Con sustento en lo anterior, señaló que *"todo intento de frustrar en los niños las naturales tendencias de afecto, respeto y consideración hacia ambos padres, en igualdad de condiciones y posibilidades, constituye grave atentado contra los más sagrados principios morales y jurídicos."* De igual manera, dicho órgano constitucional en Sentencia T-115 de 2014, expone: *"(...) los progenitores deben evitar todo comportamiento que quebrante o debilite los vínculos familiares, tales como aquellos que paralicen el contacto y la comunicación libre y directa entre sus miembros, o los que privilegien la exposición deslucida o degradante de uno de ellos, como quiera que este tipo de contextos generan graves grietas en la unidad familiar, impidiendo el desarrollo integral de los hijos en el marco de la protección constitucional a los derechos de la infancia."* **VII.** Se exhorta a los progenitores a dar estricto cumplimiento al régimen de visitas establecido en el acuerdo de divorcio suscrito ante el Juzgado Primero de Familia de Oralidad de Itagüí, entendido como la directriz vigente que regula las obligaciones parentales y los desplazamientos del menor LIAM CORREA ESCOBAR. En este sentido, las medidas iniciales adoptadas por el despacho (incluyendo la restricción de movilidad fuera de la jurisdicción de Itagüí) quedaran sin efectos, dado lo dispuesto por la autoridad judicial, por lo que cualquier actuación relacionada con las visitas debe ajustarse exclusivamente a lo ordenado por parte de dicha autoridad, en garantía del interés superior del menor y en la prevalencia de sus derechos. **VIII.** Se sugiere dar estricto cumplimiento a lo dispuesto por el Juzgado en relación con la entrega de prendas establecidas para el menor LIAM SEBASTIÁN CORREA ESCOBAR; toda vez que, según lo reportado por la señora JULIANA ESCOBAR RESTREPO, aún falta por realizar una de las entregas acordadas. Si bien el señor SEBASTIÁN CORREA MORALES manifestó que dichas entregas deberían manejarse de manera equitativa entre ambos hogares, es importante





| | **RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS** | Co...  |
|---|---|---|
| | | Ve.ALP490-S11508-2025 |
| | | **Fecha de Actualización:** 12/11/2019 |

precisar que la ropa corresponde al menor y debe estar siempre a su disposición, evitando que se convierta en un objeto de conflicto o que quede limitada a una de las viviendas. En este sentido, aunque resulte inconveniente que LIAM deba trasladarse con una maleta, es necesario que se cumpla la totalidad de las entregas pactadas, garantizando que el menor cuente con sus prendas sin generar tensiones entre los progenitores. De igual forma, se recomienda que, durante los días de visita, la señora JULIANA envíe unas mudas de ropa adecuada para el menor, promoviendo así un manejo corresponsable y fluidamente coordinado. Esta dinámica facilitará la circulación adecuada de las prendas y contribuirá al bienestar de LIAM, evitando futuros inconvenientes relacionados con este aspecto. **IX.** Finalmente, se recomienda mantener el seguimiento del presente proceso por un periodo adicional de seis meses, con el propósito de valorar los avances y/o retrocesos relacionados con las medidas implementadas en favor del menor LIAM SEBASTIÁN CORREA ESCOBAR. Durante este periodo, se considera fundamental que ambos progenitores se vinculen de manera activa y continua a la atención psicosocial, favoreciendo una mayor apertura en los canales de comunicación, la construcción de acuerdos parentales y el fortalecimiento de las interacciones familiares. Ello permitirá generar condiciones que faciliten un desenvolvimiento adecuado, estable y armónico del menor en su cotidianidad.

Así las cosas, es visto con buenos ojos por parte de esta agencia administrativa que el menor LIAM SEBASTIAN CORREA ESCOBAR continúe ubicado en medio familiar bajo el cuidado de su progenitora, la señora JULIANA ESCOBAR RESTREPO, confirmando así, la medida de protección tomada mediante el auto de apertura; así mismo, se EXHORTA a los señores JULIANA ESCOBAR RESTREPO y SEBASTIAN CORREA MORALES, para que, se mantengan vinculados al proceso de intervención de apoyo psicosocial adelantado por parte de la Fundación Sanar, hasta tanto la entidad solicite su egreso, cuyo proceso va encaminado a restablecer los derechos fundamentales identificados como amenazados y/o vulnerados; es por ello que, se les hace un llamado de atención a los representantes legales, para que éstos, se vinculen de manera activa y positiva al proceso; sumado a lo anterior, se INCITA a los progenitores del menor LIAM SEBASTIAN CORREA ESCOBAR, para que éstos, no involucren de manera directa e indirecta a su prohijado en futuras discusiones; de igual manera, continúen cumpliendo lo dispuesta en el acta de audiencia N°126 emitida por el Juzgado Primero de Oralidad del municipio de Itagüí; y dado que aún no ha sido posible restablecer de manera efectiva los derechos fundamentales de la menor objeto del proceso, esta agencia administrativa, ordenará realizar un seguimiento a la medida de protección por un término de 6 meses para así analizar avances o retrocesos en el presente PARD. Lo descrito en líneas anteriores según lo reglado en el Art. 8 de la Ley 1098 de 2006, interés superior de los NNA, en armonía con el Art. 9 de la norma en mención prevalencia de derechos.

En mérito de lo expuesto, y obrando de conformidad con la Ley 1098 de 2006, modificada por la Ley 1878 de 2018, la Comisaría de Familia del Municipio de Itagüí-Antioquia,

RESUELVE



| | RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS | Có... ...90 V...R...-S14508-2025 Fecha de Actualización: 12/11/2019 |

PRIMERO. Declarar, en situación de vulneración al niño LIAM SEBASTIAN CORREA ESCOBAR, con NUIP 1.036.268.142, de las condiciones civiles y personales antes descritas, conforme a lo relatado en los hechos, pruebas y fundamentos jurídicos.

SEGUNDO. Confirmar, la medida de protección adoptada en el Auto de Apertura N° 277 del 04 de julio de 2025, en beneficio niño LIAM SEBASTIAN CORREA ESCOBAR, ratificando la custodia y cuidados personales del mismo, a la señora JULIANA ESCOBAR RESTREPO, quien tiene la calidad de progenitora.

TERCERO. Exhortar, a los progenitores del niño LIAM SEBASTIAN, para que continúen vinculados tanto ellos como el menor, en el proceso de intervención de apoyo psicosocial implementado por la Fundación Sanar, hasta tanto, dicha entidad solicite el egreso por cumplimiento de objetivos.

CUARTO. Instar, a los representantes legales del niño LIAM SEBASTIAN, para que estos asuman su rol en calidad de padres y continúen garantizando los derechos fundamentales de su menor hijo.

QUINTO. Ordenar, a los progenitores del niño LIAM SEBASTIAN, para que éstos den cumplimiento Acta de audiencia N° 126 del 16 de septiembre de 2025 ante el Juzgado Primero de Oralidad del municipio de Itagüí, en beneficio del menor LIAM SEBASTIAN CORREA ESCOBAR, dejando sin efectos lo decidido en Autos N° 277 del 4 de julio de 2025 y N° 302 del 18 de julio de 2025.

SEXTO. Incitar a los progenitores del menor LIAM SEBASTIAN CORREA ESCOBAR, para que éstos, no involucren de manera directa e indirecta a su prohijado en futuras discusiones.

SEPTIMO. Asignar, la realización de un seguimiento periódico de la medida de protección administrativa establecida en el presente proveído, al equipo psicosocial de la comisaria de familia, con una evaluación bimestral por el término de 6 meses, esto con miras al restablecimiento pleno de sus derechos legales y constitucionales.

OCTAVO. Comunicar, la presente Resolución al Ministerio Publico.

NOVENO. Informar, que la presente providencia se considera notificada en ESTRADOS inmediatamente después de ser proferida. Contra la presente resolución procede el recurso de reposición ante esta misma Comisaría de Familia, para que modifique o revoque su decisión, dentro de los tres (3) días siguientes a la notificación de la misma, en los términos del Código General del Proceso, igualmente, habiendo existido oposición en la actuación administrativa, presentada en la oportunidad prevista, la Comisaría de Familia remitirá el expediente al Juez de Familia para su homologación, si dentro de los quince (15) a su ejecutoria alguna de las partes o el Ministerio Público lo solicita. Con expresión de las razones en que funda su inconformidad, lo anterior de conformidad con lo señalado en los Artículos 100 de la Ley 1098 de 2006 y los artículos 295 y S.s del C.G.P.

NOTIFÍQUESE Y CÚMPLASE



| | RESOLUCIÓN DE VULNERACIÓN PROCESO ADMINISTRATIVO DE RESTABLECIMIENTO DE DERECHOS | Código: NIR690-511506-2025 |
|---|---|---|
| | | Fecha de Actualización: 12/11/2019 |

CESAR AUGUSTO ESPINEL RAVE
Comisario de Familia N°3
Municipio de Itagüí



# TRADUCCIONES UNIVERSALE

## 10 Años interpretando al m FRANCINED
ZAPATA SOSSA



Resolution 511508 of December 1, 2025

RESOLUTION OF VIOLATION ADMINISTRATIVE PROCESS FOR

THE RESTORATION OF RIGHTS

Date of Update: 11/12/2019

FAMILY COMMISSIONER'S OFFICE NUMBER 3

SECRETARY OF GOVERNMENT

MUNICIPALITY OF ITAGUI

| | |
|---|---|
| DEPARTMENT: | **FAMILY COMMISSIONER'S OFFICE NO. 3** |
| SUBJECT: | **HEARING FOR THE PRESENTATION OF EVIDENCE AND RULING** |
| COMPLAINANT: | **SEBASTIAN CORREA MORALES** |
| DEFENDANT: | **JULIANA ESCOBAR RESTREPO** |
| CHILD: | **LIAM SEBASTIAN CORREA ESCOBAR** |
| CASE NUMBER: | **022-2025** |

Itagui, at 2:00 pm on November 28, 2025, the Family Commissioner's Office No. 3 of the municipality of Itagui, declares the proceedings open, in accordance with the provisions of Articles 100 and 101 of Law 1098 of 2006, modified by Article 4 of Law 1878 of 2018. In the aforementioned proceedings, Mr. Sebastian Correa Morales and Ms. Juliana Escobar Restrepo, who are the parents of the child Liam Sebastian Correa Escobar, were summoned and appeared virtually in the company of their legal representatives, Drs. Viviana Arango and Sandra Alzate respectively; Likewise, the presence of Dr. Liss Mayiberth Duarte Vasquez, in her capacity as Public Prosecutor of the municipality of Itagui, and of Luisa Rendon, Case Manager of the Sanar Foundation, is noted; and likewise, the presence of Manuela Muñoz and Valentina Macias, who serve as the psychosocial team of Family Commissioner's Office No. 3 of the municipality of Itagui and issued the report supporting the decision to be made at this stage of the proceedings, is noted. Consequently, the other evidence and proceedings in the case are incorporated, read, and transferred so that the parties may exercise their right to challenge them:

------------------------------------------------------------------------------------

Translated on JANUARY 06, 2026, in Medellin, Colombia, I the undersigned, MONICA C. GIRALDO hereby certify that I am proficient in English and Spanish, therefore I have carried out this translation, based on the document given to me. Also certify that this is a reliable, correct and complete translation made according to my knowledge of the aforementioned languages and that I am duly authorized to carry out this profession by means of Resolution #0065 issued by ministry of justice and that I Registered before the Ministry of Foreign Affairs of the Republic of Colombia.

OFFICIAL TRANSLATOR    MONICA C. GIRALDO                IDENTIFICATION NUMBER    42790065-7

OFFICIAL LICENSE NUMBER  0065                           traduccionesuniversasles02@gmail.com



**TRADUCCIONES UNIVERSALES**
10 Años interpretando al mundo

Psychosocial follow-up report within the administrative process of the rights of the child Liam Sebastian Correa Escobar.

Statement of Mr. Sebastian Correa Morales and Ms. Juliana Escobar Restrepo

Interlocutory Order of November 12, 2025, by which the Writ of Protection against Family Commissioner No. 3 was admitted by the Second Municipal Civil Court of Oral Proceedings of Itagui, under Case No. 01227-2025.

Response to the constitutional action issued by the Office of the Family Commissioner.

Interlocutory Order of November 13, 2025, issued by the Second Municipal Civil Court of Oral Proceedings of Itagui, by which the provisional measures requested within the Writ of Protection were denied, under Case No. 01227-2025.

Judgment No. 647 of November 25, 2025, issued by the Second Municipal Civil Court of Oral Proceedings of Itagui, under Case No. 01227-2025

Incident Report by the Sanar Foundation.

Memorial presented by Dr. Sandra Alzate, dated November 24, 2025, - statement regarding the evidence provided by the complainant and the report from the Sanar Foundation.

Memorial presented by Dr. Sandra Alzate, - loss of jurisdiction.

Documents presented by Mr. Sebastian Correa Morales and Ms. Juliana Escobar Restrepo.

Before continuing with the proceedings, it is necessary to first resolve the request for loss of jurisdiction presented by the legal representative Sandra Alzate, via email on November 26 of this year; For which purpose, this administrative judge has to say that, in the first instance, the Office, through Order No. 471 of October 29, 2025, set a date for the hearing for the taking of evidence and ruling of the present process, for November 14, 2025, at 11:00 a.m., which was notified to the legal representatives of the minor, on October 30, 2025; as for the communication to the public ministry, it was carried out on the same date; subsequently, and by means of a memorial filed by the aforementioned professional, she presented via email on November 13 of this year, a memorial requesting the Office a postponement of the proceedings; Whereas, she presented a diagnosis of A09X-Diarrhea and gastroenteritis of presumed infectious origin, providing summary proof thereof, that is, the Medical Incapacity which began on November 13 and ended on November 14, 2025, which was issued by the IPS Coomeva, as stated in the plenary; thus, this Commissioner's Office by means of Order No. 492 of November 13, 2025, ordered the suspension of the aforementioned proceeding, in order to guarantee the right of application and technical defense, in accordance with the

------------------------------------------------------------

Translated on JANUARY 06, 2026, in Medellin, Colombia, I the undersigned, MONICA C. GIRALDO hereby certify that I am proficient in English and Spanish, therefore I have carried out this translation, based on the document given to me. Also certify that this is a reliable, correct and complete translation made according to my knowledge of the aforementioned languages and that I am duly authorized to carry out this profession by means of Resolution #0065 issued by ministry of justice and that I Registered before the Ministry of Foreign Affairs of the Republic of Colombia.

OFFICIAL TRANSLATOR      MONICA C. GIRALDO                    IDENTIFICATION NUMBER      42790065-7

OFFICIAL LICENSE NUMBER  0065                                 traduccionesuniversasles02@gmail.com




provisions of Article 73 of the C.G.P. of Ms. JULIANA ESCOBAR RESTREPO, and determined that it would subsequently be rescheduled, as was materialized by means of Order No. 503 of November 24, 2025.

In this context, the request for postponement was based on a medical incapacity accredited by the attorney, which constitutes a justified cause to suspend the hearing, by analogy with the regime of interruption and suspension provided for in the C.G.P. to guarantee the right of defense typified in Arts. 5 and 73 C.G.P.; since denying the postponement would have implied violating the fundamental right of the mother's technical defense, affecting the validity of the process and exposing it to nullities, in accordance with what is requested in Art. 14 C.G.P., in harmony with Art. 29 of the Political Constitution, which refers to due process While it is true that the six-month term is non-extendable, as outlined in Article 100 of Law 1098 of 2006, amended by Article 4 of Law 1878 of 2018; jurisprudence and administrative doctrine recognize that the purpose of the rule is to avoid unjustified delays, not to penalize situations of force majeure that prevent the hearing from taking place due to causes beyond the control of the authority; In this case, the authority acted diligently; since the hearing was scheduled within the legal term and the suspension was due to an extraordinary and proven circumstance, and not to administrative negligence.

It must also be borne in mind that the best interests of the child require responsible, serious, evidentiary, and protective decisions, not rushed decisions made to meet a deadline. The definition of the legal situation must be timely, but also legal, fair, and respectful of the guarantees of all parties, which is a condition for the protection measure to be valid, as is the case with the protection measures adopted in this process.

As a corollary to the foregoing, the undersigned considers that the request for loss of jurisdiction is not admissible, since it stemmed from a situation beyond the control of the Office and not from actual negligence or carelessness on the part of the administrative authority, as evidenced in the case file

Continuing with the hearing proceedings, a copy of the psychosocial technical report prepared in the process will be given to each parent. This report is deemed suitable, relevant, and pertinent, as it was prepared by professionals with full knowledge of their field and the specific case. Therefore, it is considered expert evidence in this process, thus guaranteeing due process as stipulated in Article 29 of the Political Constitution.

With the evidentiary stage concluded and no procedural defects observed, the respective reports are considered final and no further additions are required. In accordance with the foregoing and there being no need to resort to other evidence, as that exhausted in this

---

Translated on JANUARY 06, 2026, in Medellin, Colombia, I the undersigned, MONICA C. GIRALDO hereby certify that I am proficient in English and Spanish, therefore I have carried out this translation, based on the document given to me. Also certify that this is a reliable, correct and complete translation made according to my knowledge of the aforementioned languages and that I am duly authorized to carry out this profession by means of Resolution #0065 issued by ministry of justice and that I Registered before the Ministry of Foreign Affairs of the Republic of Colombia.

OFFICIAL TRANSLATOR      MONICA C. GIRALDO                    IDENTIFICATION NUMBER      42790065-7

OFFICIAL LICENSE NUMBER  0065                                 traduccionesuniversasles02@gmail.com




**TRADUCCIONES UNIVERSALES**
10 Años interpretando al mundo

process is sufficient, the Court convenes for the hearing and proceeds to issue the corresponding ruling.

### RESOLUTION No. 511508 OF NOVEMBER 28, 2025

### PARD No. 022-2025

*"By means of which the minor LIAM SEBASTIAN CORREA ESCOBAR is declared to be in a situation of violation of his rights and the following measures are ordered for the restoration of his rights enshrined in Article 53 of the Code for Children and Adolescents."*

### CONSIDERING

Last May, the Office of the Family Commissioner took cognizance of a request for verification of rights filed by Mr. Sebastian Correa Morales, the father of the child Liam Sebastian Correa Escobar. He reported that the child's mother, Ms. Juliana Escobar Restrepo, allegedly violated his rights, stating that she had taken him to the United States with a temporary permit, but that she failed to return, and a Federal Judge ordered his return to Colombia. Furthermore, Mr. Correa Morales indicated that during the child's stay in the United States, his stability was affected by multiple changes of address, and physical contact with his paternal family was severely restricted, with video calls and his location being denied. In addition, it was also stated that since the child's return to Colombia, he had been out of school and that the mother denied him physical contact, only allowing video calls; and finally, the father of the aforementioned child indicated that he constantly saw his son sad. Therefore, the intervention of the Office was requested.

In light of the foregoing, on May 14th of this year, this administrative authority assumed jurisdiction over the request for verification of rights and ordered the psychosocial team to carry out the initial assessments, such as: (record of verification of rights, statements, interview and psychological evaluation reports and home visits); these reports determined that it was necessary to initiate a PARD (Administrative Process for the Restoration of Rights) in favor of the child LIAM SEBASTIAN CORREA ESCOBAR; thus, on July 4th, 2025, the Office of the Family Commissioner opened an administrative process for the restoration of rights in favor of the aforementioned minor; Because a highly hostile relationship was identified between the child's parents, this tense environment extending to the child, which could interfere with the child's healthy emotional development. This is due to the multiple conflicts that have arisen between the parents, creating a continuous cycle of violence, especially psychological violence, which indirectly affects the child's overall development, specifically their psychological and emotional development, as the child has become the object of power struggles and disputes between both parents.

---------------------------------------------------------------------------------------

Translated on JANUARY 06, 2026, in Medellin, Colombia, I the undersigned, MONICA C. GIRALDO hereby certify that I am proficient in English and Spanish, therefore I have carried out this translation, based on the document given to me. Also certify that this is a reliable, correct and complete translation made according to my knowledge of the aforementioned languages and that I am duly authorized to carry out this profession by means of Resolution #0065 issued by ministry of justice and that I Registered before the Ministry of Foreign Affairs of the Republic of Colombia.

OFFICIAL TRANSLATOR     MONICA C. GIRALDO        IDENTIFICATION NUMBER     42790065-7

OFFICIAL LICENSE NUMBER  0065                 traduccionesuniversasles02@gmail.com